# CHARLESTON.

## ELLIOT *v.* TRAHERN.

Submitted June 19, 1891.—Decided December 12, 1891.

1. ADMINISTRATORS—RECEIVER.

   Where, in a suit in equity against the administrators of an intestate, a sum of money is directed to be paid to the general receiver of the court by such administrators, and a common-law execution is directed to issue for said amount in favor of said receiver against said administrators, and, if the same be not paid, directing such receiver to enforce the same against them and their sureties on their bond as such administrators, this is a sufficient direction by the court to authorize said receiver to institute suit against said administrators and their sureties to collect said amount so decreed the said receiver.

2. PLEADING—REPLICATION—AMENDED BILL.

   The practice of filing a special replication to an answer is obsolete, except in such cases as are provided for in sections 36 and 57 of chapter 125 of the Code, where new matter is alleged in an answer constituting a claim for affirmative relief. In cases where no such new matter is alleged in the answer, the practice is to file an amended bill.

3. ADMINISTRATORS—SURETIES—JUDGMENT—DEVASTAVIT.

   A case in which a judgment confessed by a son to his father upon notes previously executed to him is held not to be fraudulent as to debts existing against the estate of an intestate, although said son was at the time said judgment was confessed one of the sureties of the administrators of said estate on their official bond, and several months after said judgment was confessed it was ascertained that said administrators had committed a considerable *devastavit*.

*Dayton & Dayton* for appellant, cited 4 W. Va. 56; 13 W. Va. 718, 730; 14 W. Va. 211; 11 How. Pr. 454; 16 How. Pr. 142; 3 Edw'ds Ch'y 390; 12 Ohio 120; 4 W. L. J. 1; 18 Ohio 240; 1 Black Judgm'ts § 349; 13 W. Va. 29; 24 W. Va. 405; 29 W. Va. 441; 32 W. Va. 447; 46 Ill. 279; Clarke Ch'y 584; 93 Ill. 400; 12 R. I. 61; 1 Paige Ch'y 637; 31 N. Y. 638; 2 Paige Ch'y 567; 2 Sandf. Ch'y 594; 64 Mo. 292; 4 Edw'ds Ch'y 538; 13 Wend. 244; 26 Barb. 580; 20 Barb. 381; 2 Wall. 249; 4 Johns. Ch'y 687; 27 Gratt. 479; 22 W.

Va. 434; 19 W. Va. 366; 30 W. Va. 443; 31 W. Va. 156; 33 W. Va. 116.

J. H. *Woods* for appellee, cited 23 W. Va. 639; 29 W. Va. 441; 32 W. Va. 203; 3 Munf. 521; 10 W. Va. 59; 33 W. Va. 116; 32 W. Va. 203; Code, c. 74, s. 1; 22 W. Va. 357; Id. 434; Code, c. 134, s. 5; 21 W. Va. 291; Id. 316; 27 Gratt. 479 ; Wait Fraud. Con. (1889) § 392; 3 Gratt. 34, 58; Code, c. 136, s. 27.

ENGLISH, JUDGE :

On the 11th day of December, 1875, James W. Trahern and John F. Trahern qualified as the administrators of James Trahern deceased, and gave bond in the penalty of twenty thousand dollars, and Francis A. Phelps became one of the sureties therein before the clerk of the county court of Barbour county ; and, said administrators having committed a *devastavit* of said estate, Truman T. Elliot, general receiver of the Circuit Court of Barbour county, filed his bill in the Circuit Court of said county against James W. Trahern, John F. Trahern, Henry Deahl, Francis A. Phelps, Walter W. Phelps, Joseph N. B. Crim, Thomas A. Bradford, and Thomas R. P. Brown, in which, after stating the appointment and qualification of said James W. and John F. Trahern as administrators of James Trahern, deceased, as also the fact of said bond, in the penalty of twenty thousand dollars, having been executed by said administrators, with Henry Deahl, Francis A. Phelps, and two others, John England and William Nestor, who were then dead, and their estates insolvent, as their sureties, the plaintiff alleges that a very large estate went into the hands of said administrators, and that on the 8th day of November, 1880, in the chancery cause of Miles White's executor, *etc.*, against said administrators, *etc.*, in said county, a decree was entered which ascertained that there was then due and distributable of the assets of James Trahern in the hands of said administrators the sum of two thousand five hundred and thirteen dollars and thirty two cents, with interest from the 19th day of March, 1879, of which seven hundred and seventy three dollars and fifty two cents was di-

rected to be paid to the defendants Brown, Bradford, and others, and one thousand seven hundred and thirty nine dollars and seventy cents to A. B. Modisett, the general receiver of the court with interest on both as last aforesaid, and leave was given him to sue out execution therefor, but no execution was sued out therein, and the portion of said decree referred to was exhibited; that said Modisett, general receiver, having died, the plaintiff was appointed general receiver in his stead, and on the 19th of July, 1881, a decree was entered in said cause suggesting the death of said Modisett, and directing the plaintiff as general receiver, to sue out execution for said one thousand seven hundred and thirty nine dollars and seventy cents, less four dollars and seventy cents; that on the 7th of April, 1879, the order appointing said administrators was revoked, and said estate was committed to the sheriff of said county as administrator *de bonis non,* but no assets ever came into the hands of said Sheriff from the estate of said Trahern; that said decree of one thousand seven hundred and thirty nine dollars and seventy cents, less four dollars and seventy cents, remaining wholly unpaid to him, on the 4th of August, 1881, he instituted in said Circuit Court against the said Traherns, as administrators, an action of debt upon their said bond, and on the 17th day of July, 1885, recovered against them and Henry Deahl and Francis A. Phelps, surviving obligors of themselves and said England and Nestor, deceased, a judgment for two thousand three hundred and twelve dollars and twenty two cents, with interest thereon from the 15th day of July, 1885, and thirty four dollars and ninety one cents costs, a copy of which judgment is exhibited; that execution issued thereon, and was returned, "No property found;" that the defendants Brown and Bradford assigned the benefit of said decree of November 8, 1880, in their favor to the defendant Crim, who also on the 14th day of March, 1883, recorded several judgments in the name of the state of West Virginia, for his use against the same defendants, one for ninety six dollars, with interest thereon from the 14th day of March, 1883, and fourteen dollars and eighty cents costs, and one for six hundred and fifty nine dollars, with interest thereon from

March 14, 1883, and twenty two dollars and seventy cents costs, which plaintiff is informed remain unsatisfied.

Plaintiff further says that on the 11th day of December, 1875, when the defendant Francis A. Phelps became the surety of the said Traherns upon said official bond, he was the owner of the undivided moiety of three tracts of land, one containing thirty five acres, and another sixty five acres, and another eighteen acres, and he was also the owner of a tract containing one hundred and thirty five acres, and that before the execution of said bond George A. Phelps had conveyed his undivided moiety in said thirty five acre tract to the defendant Francis A. Phelps, who then owned the other moiety as aforesaid; that said Francis A. Phelps is still the owner of said interests, except his undivided moiety in said sixty five acres, which was conveyed by him to said George A. Phelps, by deed dated December 29, 1882, and that the said unsold interests are chargeable with the lien of the plaintiff's judgment aforesaid, and liable to be sold to pay the same, as well as of the said Crim, assignee of said Brown and Bradford, if the same still remains unpaid; that on the 3d day of July, 1880, the defendant Francis A. Phelps confessed a judgment in favor of his co-defendant Walter W. Phelps for the sum of one thousand three hundred and thirteen dollars and forty three cents, with interest thereon from the 3d day of July, 1880, and the costs, three dollars and forty cents.

Plaintiff charged that said judgment was fraudulent and was fraudulently confessed, in order to hinder, delay and defraud plaintiff in the collection of said *devastavit* of the administrators of said James Trahern; that the same was not founded upon any valuable consideration; that the said Walter W. Phelps is the father of the said Francis A. Phelps; that the process upon which said judgment was confessed was dated July 3d, 1880, and was accepted by said Francis A. Phelps on the same day; that judgment was entered up without plea or defence on the same day; that no execution ever issued upon the judgment, and no other effort was ever made by judicial process to collect the same. Plaintiff further charged that the consideration upon which, presumably, the said judgment was based, was three

separate single bills of said Francis A. Phelps executed to Walter W. Phelps, dated and payable as follows: "one for two hundred and sixty six dollars and sixty six cents, with interest dated February 15, 1873, due; one for two hundred and seventy five dollars, with interest, dated October 7, 1873, due; and one for four hundred dollars, with interest dated July 21, 1874, due; that the said three single bills bear upon their faces evidences and badges of fraud; that all of them were executed at the same time, written by the same pen, hand, and ink; and that the note dated July 21, 1874, was written before and on the same piece of paper as the note dated February 15, 1873, and then cut apart; and that the said notes and confession of judgment show other signs of fraudulent intent and purpose of the said Francis A. Phelps and Walter W. Phelps; and he prayed that said land owned by said Francis A. Phelps at the rendition of plaintiff's judgment may be sold to satisfy the same.

On the 27th day of October, 1887, the defendants W. W. and F. A. Phelps filed their joint answer to the plaintiff's bill, admitting the execution of said administration bond, and that said F. A. Phelps was one of the sureties therein; that the judgment described in the bill was obtained by A. B. Modisett, general receiver, as therein stated; that the defendant Francis A. is the owner of the several parcels of land, or the interests therein, set out in said bill, and that the judgment for one thousand three hundred and thirteen dollars and forty three cents and three dollars and forty cents was confessed by said Francis A. Phelps to respondent Walter W. on the 3d of July, 1880, as set out in said bill; but they deny that the same was done with intent to hinder, delay and defraud the creditors of said Francis A. as charged by plaintiff in said bill; and they say that, while the three notes or obligations upon which said judgment was founded were executed at the same time, it is equally true they were given for debts theretofore contracted by said Francis A. to respondent Walter W.; that said Walter W. had been in the service of the Baltimore & Ohio Railroad Company for many years, as a maker of patterns in its machine-shops; that he was a good mechanic, and received wages accordingly, and had saved quite a consid-

able part of his earnings, and that the said notes or obligations represented in part the price of property he had sold to said Francis A., and in part money or cash he had lent to him about the dates fixed in said notes or obligations; and, said Walter W. being an old man, then about eighty years old, now about eighty six or eighty seven years old, respondent, deeming it right he should be secured in said debt, did have said judgment confessed and rendered as aforesaid, on the 3rd day of July, 1880, intending thereby to give said defendant Walter W. a preference as to other creditors, but not intending any fraud thereby, which they submit they had a right to do as fully as any debtor in like situation. The defendant George A. Phelps also answered said bill, setting forth the manner in which he and said F. A. Phelps became the joint owners of a tract of land containing sixty seven and a half acres in said county, on the 14th day of March, 1865, by deed from S. J. Bowman and wife, and also that said F. A. Phelps, on the 29th day of December, 1882, for the consideration of three hundred dollars, conveyed his interest in said tract to respondent George A. Phelps, and claimed that he was entitled to hold the same acquit from any of the liens set up in the cause or reported by the commissioner therein, since none of them were docketed when said deed was recorded.

On the 26th day of May, 1890, the plaintiff filed a special reply in writing to the joint answer of said F. A. and W. W. Phelps, in which he says he is informed that the three notes therein mentioned were not executed as of their several dates, February 15, 1873, October 7, 1873, and July 21, 1874, but were all executed at the same time, to wit, in July, 1880, and after the lapse of more than five years from the creation and maturity of the several debts pretended to be represented thereby; and plaintiff therefore says that the said debts were and are barred by the statute of limitations, upon which he relies as a defence thereto.

Quite a number of depositions were taken, both by the plaintiff and defendants, in the case; and on the 18th day of October, 1888, a decree was entered therein, referring the cause to L. D. Morrall, a commissioner of the court, to ascertain the real estate owned by the defendant Francis

A. Phelps, the title thereto, the liens thereon, and to whom owing, the amount and character of the same, the rental value per annum of said land, to take proof in relation to the true consideration, if any, of said liens, as charged in the bill *etc.*; and, in pursuance of said decree, said commissioner made and returned his report, which was excepted to by the plaintiff because it reported the judgment of W. W. Phelps as a lien upon said land prior to plaintiff's lien.

On the 31st day of May, 1890, the cause was heard upon the proceedings had therein, including the report of Commissioner Morrall, and the exceptions thereon indorsed by the plaintiff; the special replication in writing, to which the defendants Francis A. Phelps and Walter W. Phelps excepted; and upon the former orders and the depositions taken in the cause; and the court held that the judgment for one thousand three hundred and thirteen dollars and forty three cents, with interest from the 13th day of July, 1880, and three dollars and forty cents costs, confessed by the defendant Francis A. Phelps to the defendant Walter W. Phelps, on the 3d day of July, 1880, was, as to the judgment of the plaintiff therein mentioned, fraudulent, and must be postponed to the payment thereof out of the proceeds of the real estate of said Francis A. Phelps, and sustained the exceptions to said commissioner's report.

The court then proceeded to recite the judgments which constituted a lien upon the lands of said F. A. Phelps; held that the eighteen acres mentioned in the answer of George A. Phelps was not liable for any of said judgments; and proceeding to ascertain the liens upon said one hundred and thirty five acres and said thirty five acres of land and to fix the order of their priorities, held that they were liable (1) for the payment of the judgment of the plaintiff, amounting, on the 31st day of May, 1890, to the sum of three thousand and twenty three dollars and twenty cents; (2) for the payment of the judgment of Walter W. Phelps, amounting, as of said last-named date, to the sum of two thousand and ninety eight dollars and twenty one cents; (3) for the payment of the two judgments for the use of J. N. B. Crim, ratably amounting, on said last-

named day, to the respective sums of one hundred and fifty two dollars and thirty five cents and nine hundred and ninety six dollars and thirty three cents; and further directed that unless the said Francis A. Phelps should, within thirty days, pay said several amounts, with interest from the 31st day of May, 1890, and costs, a commissioner therein appointed should sell said thirty five and one hundred and thirty five acre tracts in the manner and upon the terms therein directed; and from this decree the defendants Francis A. Phelps and Walter W. Phelps obtained this appeal.

The first error assigned by the appellants, to wit, that "the bill should have been dismissed because instituted by the plaintiff, as general receiver of the Circuit Court, without its leave or authority," appears to have been abandoned by the appellants under the rulings of this Court in the case of *Howard* v. *Stephenson*, 33 W. Va. 116. In that case Judge GREEN, in delivering the opinion of the Court, said: "It is claimed, however, that the plaintiff, as receiver of the court, had no right to bring such a suit as this without the leave of the court. But it does not appear from the record that he did not have such leave, and, when the plaintiff's authority to bring suit is not denied or disputed, it will be presumed to exist. The plaintiff, in the absence of any denial of his authority to bring such suit, is not required to allege or prove it."

In the case at bar there was no denial of the plaintiff's authority, as such receiver, to bring said suit, but, on the contrary, the defendants F. A. and W. W. Phelps admit that judgment was recovered by A. B. Modisett, general receiver, as stated in the bill, which alleges that said receiver was directed to collect said sum of one thousand seven hundred and thirty nine dollars and seventy cents, less four dollars and seventy cents, which allegation is fully supported by Exhibit F, filed with said bill, which exhibit is an abstract from a decree rendered in the case of *White's Ex'r* v. *J. W. Trahern and John F. Trahern, administrators of James Trahern, deceased;* which decree, among other things, directs that T. T. Elliot, as general receiver, shall make report of his collections; "and as such receiver

shall, if the same is not paid, proceed to enforce the same (meaning said amount decreed him) against them and their sureties in their bond as such administrators of the estate of James Trahern, deceased."

The second assignment of error, to wit, "that the court erred in permitting, against the exception of said F. A. and W. W. Phelps, the special replication to their joint answer to be filed," raises a question of practice. In said special replication the plaintiff alleges that said notes upon which said judgment was confessed by F. A. Phelps were dated back, and that they were executed more than five years after the creation and maturity of the debts pretended to be represented thereby, and plaintiff, therefore, says said debts were barred by the statute of limitations, upon which he relies as a defence thereto."

As to the practice of filing a special replication, we find that it has become obsolete. In Sand. Eq. 388, it is said that the general replication is now only used for raising new issues or supplying a defect in the statement in the bill. The special replication has become obsolete, both in England and in this country. Citing Mitf. Eq. Pl. 332; 2 Rob. Pr. (Old) 315. The office of the special replication is supplied by the filing of an amended bill. *Lewis' Ex'r* v. *Bacon's Legatee*, 3 H. & M. 104; also *Hudsons* v. *Hudson's Adm'r*, 6 Munf. 352; *Miller's Heirs* v. *McIntyre*, 6 Pet. 61; 1 Bart. Ch. Pr. 417. See, also, *Enoch* v. *Petroleum Co.*, 23 W. Va. 314; *Chalfants* v. *Martin*, 25 W. Va. 394.

It is true that our Code, p. 810, c. 125, s. 57, provides that "when a defendant in equity in his answer alleges new matter constituting a claim for affirmative relief, the cause shall be decided upon the same principles, and the same relief shall be decreed in the case as if a cross-bill had been filed to obtain such relief;" and section 36 of the same chapter (page 805) provides that "every material allegation of the bill not controverted by an answer, and every material allegation of new matter in the answer constituting a claim for affirmative relief, not controverted by a special reply in writing, shall, for the purposes of the suit, be taken as true, and no proof thereof shall be required."

This provision of the statute must be regarded as creat-

ing an exception to the general rule of practice established both in England and in this country, and the proper course to be pursued by a plaintiff is to amend his bill, unless, as is contemplated by the statute, new matter is set up in the answer which entitles the defendant to affirmative relief; and we can see nothing in the joint answer filed by the defendants F. A. and W. W. Phelps which asserts new matter which would tend to constitute a claim for affirmative relief, and in said answer they pray for no affirmative relief.

We therefore conclude that the court below erred in overruling the exception thereto, and allowing special replication to be filed, and, if the practice allowed a replication of this character to be filed, it has been settled in this State that in marshaling assets, unless it be in proceeding to subject the real estate of a decedent to the payment of his debts, the statute of limitations can not be set up by one creditor of an estate against another creditor to give his claim precedence.

In this case the general receiver and Crim and W. W. Phelps are all asserting judgment liens against the real estate of F. A. Phelps, and the general receiver, in order to invalidate the judgment of W. W. Phelps, seeks by his special replication to plead that the notes upon which F. A. Phelps confessed the judgment to his father, W. W. Phelps, were executed for claims which were barred by the statute of limitations before said notes were executed. If, however, such was the case, F. A. Phelps was the debtor, and he alone could have interposed that plea; and, even if he had done so, W. W. Phelps, the plaintiff, would have had the privilege of showing, if he could, some excuse for the delay. But the notes have been merged in a judgment, and it is too late to raise that question.

In the case of *Clarke* v. *Hogeman*, 13 W. Va. 730, JOHNSON, J., in delivering the opinion of the Court, said: "The statute of limitations is set up by the defendant Hogeman as a bar to the claim of the petitioner. This is a defence that can not avail him in this cause. The petitioner is not seeking to recover the claim from him, except as to the ninety four dollars. He is not the debtor, and the statute

of limitations is a plea that the debtor, or the party against whom a claim is set up, can rely upon, and he only."

The next error assigned by appellants is that it was error to hold the judgment of W. W. Phelps to be fraudulent as to plaintiff, and to postpone its payment. I will not say that the facts presented in this case, showing that a son who had been indebted to his father for several years, without giving him a note or other acknowledgment in writing of the indebtedness, who then executed notes to his father, giving them different dates to correspond with the periods at which such indebtedness accrued, even if the debts for which said notes were executed were not barred by the statute of limitations when they were given, and who then confesses judgment on said notes in favor of his father, said son being one of the securities on an administration bond in the penalty of twenty thousand dollars, which administrators, four months after the date of said confession, were ascertained to be in debt to their intestate's estate over two thousand five hundred dollars, do not present strong indications of fraud. They, however, present only a *prima facie* case, and are susceptible of explanation and rebuttal.

The record discloses the fact that said judgment was confessed by F. A. Phelps on the 3d day of July, 1880, and the indebtedness of said administrators to the Trahern estate was not ascertained until the 8th day of November, 1880. The judgments in favor of Crim against said F. A. Phelps were not obtained against said F. A. Phelps until the 14th day of March, 1883, and the judgment in favor of the receiver was not obtained against said F. A. Phelps until the 15th day of July, 1885. At the time said judgment was confessed by said F. A. Phelps it does not appear by any evidence in the record that he had any knowledge that the administrators for whom he was surety were indebted to the estate they represented; and while his father was an old man, having attained the age of eighty six years at the time his deposition was taken in this case, in December, 1887, the evidence shows that he had not been an idle man; that in his young days he had been a cabinetmaker in the city of Baltimore for ten or twelve years, and

that in 1836 he commenced making patterns for the Baltimore & Ohio Railroad Company, and continued that business until 1872; that he had accumulated some property, both real and personal; that he had five children, part of whom were daughters, one of his daughters having died about the year 1874, and his wife having died in 1880 or 1881.

At the time said judgment was confessed he had reached that period of life when it would reasonably be expected that he should wind up his affairs, and collect his debts, with a view of making a distribution among his children, and it may have been that one thousand three hundred and thirteen dollars and forty three cents was more than he felt able to give his son Francis A., or some of his other children may have needed it more, or had stronger claims upon his bounty, and for this reason he saw proper to collect this debt, and have it within his own control.

These circumstances are mentioned to show that other motives or incentives may have actuated the defendant W. W. Phelps in taking said confession of judgment from his son than a desire to assist him in delaying or defrauding the creditors of the Trahern estate, and there is no evidence that W. W. Phelps had any notice whatever that said F. A. Phelps was one of the sureties on said administration bond, or was indebted to any person other than himself.

It is, however, sought to bring this case within the ruling of the case of *Crawford* v. *Carper*, by showing that the debts for which such notes were executed, on which said judgment was confessed to W. W. Phelps, were barred by the statute of limitations, yet, even if said questions had been properly raised by the pleadings in the case, the weight of evidence establishes that such was not the case, and the error in filing said special replication may be classed as harmless.

It appears from the evidence of both F. A. and W. W. Phelps that the sum of two hundred and sixty six dollars and sixty six cents was one third of the proceeds of a lot in the city of Grafton, which was owned jointly by F. A., George A., and W. W. Phelps, which sum W. W. Phelps

loaned to F. A. on the 15th of February, 1873, at the time said lot was sold. This testimony is confirmed by John W. Cornwell, who states that he sold F. A. Phelps the land on which he resides, and that he received from F. A. Phelps from three hundred to five hundred dollars at the time said house and lot were sold in Grafton, and that he also got from him a wagon and two horses, for which he allowed him two hundred and seventy five dollars, at the same time, which horses and wagon are shown to have belonged to W. W. Phelps; and W. W. Phelps says he can not state when said notes were written, but that it was three or four years before the judgment was confessed, and F. A. Phelps proves the same.

That the four hundred dollars was loaned by W. W. Phelps to said F. A. in 1874 is not only shown by both of their depositions, but by the deposition of Elizabeth J. Moats, who swears that she saw said F. A. Phelps borrow four hundred dollars from his father in 1874. That these notes were executed in the year 1877 is shown by the testimony of Benjamin Bowman, who was introduced for the purpose of impeaching T. J. Showalter, and who states that in the year 1877 he was working for F. A. Phelps; that Thomas J. Showalter came there, and stayed over night, and heard him speak of having some writing to do for W. W. Phelps; that, some days after, W. W. Phelps came to his son's house, and told him he wanted their business fixed up, that it had been running long enough; and he saw F. A. Phelps execute to W. W. Phelps three notes, which W. W. Phelps had prepared, one for four hundred dollars, and he did not remember the amount of the other two. It is shown by the depositions of Hiram Cornwell and Elisha Newcomb, who were also introduced for the purpose of impeaching said Showalter, that said Showalter told them that he prepared said notes in 1877, and the letter of said Showalter, filed with the deposition of F. A. Phelps, that he did said writing in 1877; and these witnesses are contradicted as to the time when said notes were written by Thomas J. Showalter alone, who states that they were written in 1880; does not remember at whose house they were written, but does remember that he lived at Moatsville at the time.

The weight of evidence, then, clearly shows that said debts were not barred at the time said notes were executed, and the ruling in the case of *Crawford* v. *Carper*, 4 W. Va. 56, has no application to the case under consideration; and I can see no good reason why the court should have held the judgment of W. W. Phelps, confessed as aforesaid, under all the circumstances proven in the case, fraudulent as to the plaintiff's debt, and I think the court committed an error in so holding.

The fourth assignment of error relied upon by appellants is that "it was manifest error to give the plaintiff's judgment priority over the judgments of the defendant Crim, which, by the allegations of the bill, are admitted to be prior in dignity;" but as the said Crim is not an appellant or complaining of said error, if it exists, and the appellants are in no manner injured, but rather benefitted, by the commission of said error, if by so postponing the judgments of Crim one has been committed, the appellants can not be heard to complain. See *Eib* v. *Pindall's Ex'r*, 5 Leigh, 109; *Vance* v. *McLaughlin's Adm'r*, 8 Gratt. 289; *Miller* v. *Rose*, 21 W. Va. 191.

For these reasons the decree complained of must be reversed, with costs, and this cause is remanded to the Circuit Court of Barbour county for further proceedings to be had therein.

Reversed. Remanded.