# CHARLESTON.

### PAT GAY *v.* JAMES GIBSON *et al.*

Submitted November 18, 1919.   Decided November 25, 1919.

1. EQUITY—*Amendments Favored—New Matter in Answer—Amended Bill.*

   Amendments to pleadings to promote justice are always favored in equity, and when new matter is introduced in an answer, not as a basis for affirmative relief, but defensive only calling for a reply, such new matter should be met by an amended bill: (p. 230).

2. SAME—*Direction of Accounting Without Waiting for Amended Bill.*

   And where such amended bill relates only to certain items of debit and credit in an accounting to be had between the parties, and the case on its merits has been fully matured for hearing, it is unnecessary to await the answer of the defendant to the amended bill before adjudicating the principles of the cause and directing such accounting.   (p. 230).

3. PARTNERSHIP—*Trusts—Right to Settlement on Pleadings and Proof—Reconveyance of Land to Plaintiff.*

   The pleadings and proof in this case show plaintiff entitled to a settlement of the partnership existing between him and defendant; and also to the execution by defendant of an express trust relating to the purchase by him of plaintiff's lands at a judicial sale thereof, and the re-conveyance to him of said lands upon the terms of the contract.   (p. 231).

Appeal from Circuit Court, Pocahontas County.

Bill by Pat Gay against James Gibson and others.   Decree for defendant James Gibson, and plaintiff appeals.

*Reversed; decree for plaintiff; remanded.*

*L. M. McClintic, F. R. Hill,* and *McClintic, Mathews & Campbell,* for appellant.

*J. E. Buckley, Andrew Price, Charles G. Peters,* and *Blue, & McCabe,* for appellee.

MILLER, PRESIDENT:

The decree appealed from defeated the plaintiff in each of the two purposes of his bill.   The first was to obtain a settle-

ment of an alleged partnership theretofore existing between him and the defendant Gibson, for the purchase, grazing and sale of cattle and sheep, to be conducted on lands then owned by plaintiff but about to be sold under a judicial decree for the benefit of creditors. The other object of the suit was to enforce specifically the provisions of an alleged agreement entered into between plaintiff and defendant about the same time, whereby Gibson, a creditor and also related to plaintiff in the degree of first cousin, in anticipation of the sale of plaintiff's lands, agreed with plaintiff verbally to attend said sale and buy in said lands, he to retain and pay for one of the tracts, known as the Moore Place, containing three hundred and sixty acres, at the price it should be bid in by him, and to take and hold in trust for plaintiff his home tract of sixty-eight and three-quarter acres, known as the Levi Gay Place, and two other tracts known as the Shearer Land, containing seven hundred and one hundred and forty-one acres respectively, and that when plaintiff should have repaid him out of his share of the partnership profits, or otherwise, the money paid by him for the lands to be so purchased and held in trust with the interest thereon, defendant was to reconvey the same to him.

The bill alleges the purchase of said lands by defendant pursuant to said agreement, on January 18, 1912, at the aggregate price of seventeen thousand five hundred and eighty-four dollars, and of which at the time of sale and during the years 1912 and 1913 he paid sums aggregating $8,022.86, but of which sum plaintiff himself had before defendant acquired the title to said lands paid $4,011.43; that this sum together with other sums paid by plaintiff amounting to $3,000.00, and the profits of said partnership, with which he is chargeable, and the sum of $9,-200.00, represented by the note of said Gibson of January 20, 1914, and secured by a deed of trust on said lands to the defendant Andrew Price, trustee, taken up and paid off by plaintiff at the bank where discounted, and the proceeds of which had gone to pay off and discharge to the special commissioners the balance of the purchase money for said lands, plaintiff had fully performed his partnership contract and had fully discharged his obligation to defendant under the alleged trust agreement, and was entitled to have a settlement of said partnership and to en-

force said trust, and to have the lands, the subject thereof, reconveyed to him by Gibson as required by his contract, and this substantially was his prayer for relief.

Defendant demurred to and also answered the bill, and also interposed a special plea of the statute of frauds. This demurrer does not appear to have been specifically disposed of, but in effect was overruled or disregarded on the dissolution of the injunction awarded plaintiff on the original bill, and by the final decree on the merits. The grounds of demurrer were general, as well as special, the only special ground being that the bill failed to allege or show at what price the Moore farm was purchased and the relative value thereof to the gross purchase price, $17,625.00. The answer denied the alleged partnership agreement, and also the alleged trust agreement, and denied any and all interest of plaintiff in the purchase of said lands other than that of securing the payments of his debts proven and decreed against said lands; it alleged the purchase of said lands by defendant with his own money and that plaintiff had no part or parcel therein, and denied payment by him of any part of the purchase money.

It is however alleged in the answer, apparently in response to the allegations in the bill, that plaintiff himself had paid as a part of the aggregate of $8,022.86, during the years 1912 and 1913, the sum of $4,011.43, that respondent was at the time of the sale of said lands the owner of two liens standing high in the order of priority, and that plaintiff was also indebted to him in other sums of money and liable to him as endorser, and that on May 15, 1909, he undertook to protect himself by obtaining from him a deed of trust on certain personal property for loans and endorsements, aggregating $4,305.00; that at the same term of court at which he purchased said lands, two judgments were recorded against plaintiff and himself as endorser for .$864,29 and $1,019.64, respectively, and that as the sale approached, defendant learning that all of the personal property on which he had a deed of trust had been sold and driven away by plaintiff and that there was no security left him for the debts and liabilities covered thereby, he decided to attend said sale and look after his interests, and which resulted in his buying in said lands, first at the price of $17,100.00, and then the fol-

lowing day, after an upset bid had been put in by some one, at the price of $17,625.00, and which sale was confirmed to him; that the result of said sale was that while the purchase price was sufficient to reach and pay the sum decreed him as assignee of Henry Barlow, nothing was left to pay him the two judgments recovered at the same term of court at which he purchased said lands. And he further denied that plaintiff had any part in said sale or any agreement with him whereby he was to reconvey said lands to him, or any part thereof, as alleged.

Respondent further pleaded by way of estoppel a certain contract in writing exhibited with his answer, entered into between himself and plaintiff on January 18, 1912, the day of the sale and purchase of said lands by him, wherein plaintiff purports to acknowledge an indebtedness to respondent in the sum of $2,500.00, consisting of a note and an open account, and reciting defendant's desire of additional security therefor, that plaintiff had pending a suit against the estate of J. C. Gay, deceased, his father, for a certain amount due him as an heir, and that in consideration of the premises and the further consideration of one dollar, plaintiff thereby assigned to defendant the sum of $2,500.00 out of any judgment he might recover in said action; and he pleads this contract in settlement and as evidence of an account stated between the parties and binding plaintiff. And starting with this indebtedness thus acknowledged, defendant in his answer makes up an account, in which he includes accrued interest thereon; the judgments obtained against him aforesaid, aggregating with interest $2,643.76; certain live stock, not itemized, and the proceeds thereof, amounting to $8,490.00; and lastly rent for the Levi Gay farm, $1,500.00; aggregating in all the sum of $15,902.51. Against this debt he credits plaintiff with the said note of $9,200.00, a check for $184.00 paid by him to the bank for discount thereon, and another check for $100.00, and strikes a balance showing plaintiff indebted to him in the sum of $6,418.51.

On the pleadings thus presented the parties appear to have proceeded to take their evidence, and concluded it some time in November, 1917, and thereafter, just when does not definitely appear, plaintiff tendered his amended and supplemental bill, which with defendant's demurrer thereto, joined in by plaintiff,

was for the first time noted on the record and disposed of by the final decree. The decree sustained the demurrer to said amended bill, and reciting that as no further amendments were offered, the same was dismissed; and the court being of opinion that there was no equity in plaintiff's suit, it was finally ordered and decreed that said suit be dismissed with costs to defendant.

We pause to observe that the record as made up and certified to this court is a very unsatisfactory one. In not a single instance, we believe, does the record show the date of any order in the cause; it does not even show the date of the final decree. The petition for the appeal says that this decree was pronounced at the August term, 1918. The clerks of the courts, as well as the counsel concerned, should see to it that the statute and the rules of the court, in making up and certifying records, are substantially complied with.

The first point of error is that the court should have overruled defendant's demurrer to the amended and supplemental bill. Of course if there is no merit in plaintiff's cause, the error of the court, if any, would be harmless. But we think there is very substantial merit in the cause as presented on the original bill. Amendments to pleadings in equity tending to promote substantial justice are always favored. *Cummings* v. *Hamrick,* 74 W. Va. 406. And where some new matter is set up in the answer of the defendant by way of estoppel or avoidance of liability or right to relief, and which in ancient pleading might have been made the subject of a special replication, plaintiff may now of right, since special replications are no longer recognized, so amend his bill as to meet the matters of defense so introduced by defendant. *Elliott* v. *Trahern,* 35 W. Va. 634; 18 Enc. Plead. & Prac. 681. Under our statute special replies are only proper where some new matter constituting a claim for affirmative relief is set up in the answer. See West Virginia cases cited in the note at the same page of the book last cited. And we have other cases also which affirm the same proposition. *Snyder* v. *Martin,* 17 W. Va. 276; *Hyre* v. *Lambert,* 37 W. Va. 26; *Wood* v. *Wood,* 50 W. Va. 570. Indeed this proposition has become elementary. It is also proper to admit an amended bill when necessary to make the pleadings conform to the proof, unless a new cause of action, not germane to the original, is

thereby presented.    *Marshall* v. *Porter,* 73 W. Va. 258; *Hertzog* v. *Riley,* 71 W. Va. 651, and cases cited.

In this case the amended bill reaffirms the allegations of the original bill and makes it a part thereof.    The new matter pertains; first, to the suggestion in defendant's demurrer and answer to the original bill that it was not alleged what relation in value the Moore tract had to the total purchase price of the several tracts purchased.    The amended bill attempts to meet this point, by alleging that the several tracts were first offered separately and that defendant had bid· $3,000.00 for this tract, which was its relative value and with which defendant should be charged.

Second, with respect to the denial in the answer that plaintiff had paid any part of the down payment of purchase money on the several tracts purchased, the amended bill alleges that of the judgments proven and decreed in favor of defendant as assignee, and with which he was credited on the purchase money, part were paid by plaintiff; that on October 6, 1910, plaintiff sold to one Hansbarger cattle for the sum of $5,017.82, the check for which sum was made to defendant; that about the same time there was paid to Gibson by L. M. McClintic the sum of $277.03, the money of plaintiff; and that out of the aggregate of these two sums, $5,294.87, defendant paid on the Barlow judgment $2,000.00; to Buzzard, Sheriff, on the M. E. Pue judgment $1,193.76, and to P. L. Yates $895.45, but that he took from Barlow an assignment of $2,000.00 of that judgment, to secure himself as endorser on plaintiff's note for something over $1,200.00, with the proceeds of which he discharged the balance of the Barlow debt, which note was discounted at the First National Bank of Marlinton, and not being paid by maker or endorser, the bank at the April term of court, 1917, obtained a judgment for $1,461.45, which judgment of right defendant should have paid, inasmuch as it appeared that he had then been paid or allowed by the commissioners a credit on the purchase money of $2,981.08, on account of the Barlow debt, and that he should not now be allowed in settlement with plaintiff credit for debts paid by him as aforesaid.

Third, with respect to the alleged contract of January 18, 1912, pleaded by way of estoppel and as evidence of an account

stated between plaintiff and defendant, the allegations of the amended bill are that this paper was signed by plaintiff at the instance and request of defendant, and while plaintiff was under obligations to him for assisting him in the purchase of his lands, defendant suggesting that if anything was realized on plaintiff's claim against his father's estate, it would enable him to provide additional means to carry on the partnership business of buying and selling live stock; that defendant had no note or open account as described therein, and that he was not indebted to him on any note or open account at that time, and that such paper was fraudulently procured by defendant; that he never realized anything on said supposed assignment, nor was it in any way allowed to affect injuriously plaintiff's unsecured creditors, whose debts since then he has in fact for the greater part paid off and discharged.

Assuming, as suggested by defendant's counsel, that plaintiff participated in this alleged fraudulent assignment of his interest in his father's estate, that contract was subsequent to and in no way involved in his original contract of partnership or the trust agreement with defendant. Defendant denies both agreements, and of course can not be heard to say that the contract of January 18, 1912, amounted to a settlement or acknowledgment by plaintiff of any indebtedness on partnership or trust account. Moreover, all these matters brought in by way of an amendment to the original bill, relate not to the merits of the cause as made thereby, but to questions of credit and debit in the accounting to be had between the parties. What sums plaintiff and defendant may be chargeable with or be entitled to credit for, will more properly arise on final settlement of the accounts between them. For the foregoing reasons we are of opinion that the amended bill should have been admitted and that the court erred to the prejudice of plaintiff in rejecting it.

Now upon the merits. It is conceded that if the facts of partnership and of the trust agreement alleged are made out by the proof, notwithstanding the plea of the statute of frauds, which can have no application to a trust of this character, plaintiff would be entitled to the relief prayed for. As the amended bill relates only to matters involved in the accounting to be had, defendant may be given opportunity before such accounting to

plead or answer thereto, and without further delay we may therefore proceed to dispose of the case on its merits. We approach this subject with all due respect to the opinion and decree of the circuit court. We are, however, not bound by the findings of the lower court. Viewing the case upon the pleadings and proofs presented, it is our opinion that plaintiff has made out his right to relief upon both phases of his bill, by the plain preponderance of the evidence. We do not see how there can be any doubt about this. Of course plaintiff and defendant in pleadings and testimony affirm and deny the alleged contracts. But the case of the plaintiff does not, as does that of the defendant, stand on his own unsupported testimony. By numerous other witnesses plaintiff proves the subsequent declarations or admissions of defendant to the effect that he had bid in the land for plaintiff; that all he wanted was the interest on his money; that he had bought in the land for plaintiff if he would pay him; that in buying the land he was simply buying it to help plaintiff; that he was standing behind plaintiff; that he was backing him, etc. Moreover, defendant admitted when on the stand as a witness that he had made declarations to these witnesses substantially as testified to by them, or by his language may have made such impressions on their minds, and he furthermore admits that he did have it in mind to let plaintiff have these lands if he should pay him for them. But this is not all. Defendant took immediate possession of the Moore tract, according to the agreement alleged, and thereafter procured an order to be made in the cause, permitting him, on giving security for $3,000.00 represented as the value thereof, to obtain from the commissioners a deed for that tract before obtaining legal title to the other tracts. We think this fact very significant of the rights of plaintiff pertaining to the other tracts. Plaintiff remained in possession of these other tracts as before the sale, farming them, without any agreement for such occupancy or use, other than the one alleged in the bill, buying and selling cattle and sheep, the money for which sales, for the most part at least, went to defendant. The dealings between the parties in relation thereto were wholly inconsistent with defendant's theory that plaintiff was his tenant. He admits he had no special contract for such tenancy.

And with respect to the alleged partnership, the evidence shows that plaintiff and defendant bought and sold cattle and sheep, which were grazed and fed by plaintiff, and that in several instances they signed contracts and writings and gave joint notes therefor, and that these transactions were conducted on the land occupied by plaintiff. We are therefore of opinion that plaintiff is entitled to the relief sought by his bill, and that the decree below must be wholly reversed.

Our decree here will be; first, that a partnership existed between plaintiff Gay and defendant Gibson, for the purpose of carrying on the business of buying and selling cattle and other live stock, as alleged, beginning on or about January 17, 1912, and continuing up until such time as the court may ascertain upon the accounting to be had between them the partners ceased to have partnership transactions, this fact not being fully developed by the evidence now before us; second, that at and before defendant finally purchased plaintiff's lands on January 18, 1912, he agreed to buy in for plaintiff the sixty-eight and three-quarter acre tract, his home place, and the two tracts known as the Shearer Land, containing some eight hundred and forty-two acres, and hold the same in trust for plaintiff until he should repay him out of his share of the profits of the partnership, as alleged, or otherwise, the purchase money paid him, with interest, and that plaintiff is entitled to a settlement of such trustee account, and upon such settlement and payment by him of the balance of the purchase money due defendant, if any, the defendant should be decreed to reconvey said several tracts to plaintiff in discharge of said trust; and if it should turn out on such settlement that he has already been paid in excess of principal and interest, plaintiff should be decreed against defendant any sum found in his favor, as may be shown on such accounting; and that in either event the rights of the parties should be settled and decreed on the principles of mortgagor and mortgagee. *Liskey* v. *Snyder*, 56 W. Va. 610.

And the cause will be remanded to the circuit court for further proceedings to be had therein in accordance herewith, and further according to the rules and principles governing courts of equity.

*Reversed; decree for plaintiff; remanded.*