# CHARLESTON.

## HAMILTON v. McKINNEY.

Submitted September 10, 1902.   Decided December 20, 1902.

1. EQUITABLE TITLE—*Real Estate—Statute of Frauds.*

   A trust, as the basis of an equitable title to real estate, may be proved by clear and satisfactory parol evidence, and, in such case, the statute of frauds does not apply. (p. 319).

2. EQUITABLE ESTATE—*Preponderance of Evidence.*

   Although the evidence of the parties litigating, in respect to such equitable estate, conflict, it will be established if there is a clear and weighty preponderance of evidence in favor of the plaintiff. (p. 322).

3. EQUITABLE TITLE—*Adjudication.*

   Where the legal title is outstanding and under the control of the court in another suit in which the sale, under which the contending claimants purchased, was made, the court may adjudicate the rights of the parties, in respect to the equitable title, without ordering a conveyance of the legal title, and, if such adjudication be in favor of the plaintiff, it will support his claim in such other suit for an order or decree directing a conveyance of the legal title to him. (p. 322).

4. ERROR—*Reversal.*
   Although erroneous, a decree will not be reversed unless the
   error is prejudicial. (p. 323).

Appeal from Circuit Court, Tucker County.

Bill by John Hamilton against C. J. McKinney, Decree for
plaintiff, and defendant appeals.

*Affirmed.*

G. P. SHIRLY and A. J. VALENTINE, for appellant.

J. P. SCOTT and C. LIPSCOMB, for appellee.

POFFENBARGER, JUDGE:

On the 5th day of March, 1901, the commissioner of school
lands of Tucker County, in pursuance of a decree of the circuit
court of said county, sold three tracts of waste and unappro-
priated lands, containing, respectively, two hundred and ten,
fifty-three and twenty-seven acres, to C. J. McKinney, for two
hundred and eleven dollars, one hundred and seven dollars and
twenty-five dollars, respectively, receiving therefor the sum of
one hundred and seventy dollars in cash, being about one-half
of the entire purchase money, and three notes for fifty-seven
dollars and sixty-six and two-thirds cents each, executed by Mc-
Kinney, with John Hamilton and Tena Hamilton, his wife,
as sureties, and payable in six, twelve and eighteen months after
their respective dates. At the March term, 1901, of said court,
the sale was confirmed, and the commissioner authorized to col-
lect the notes when due, and, after payment of all the purchase
money, to make a deed to the purchaser.

At May rules, 1901, before any deed had been made to Mc-
Kinney, John Hamilton filed his bill against him in said court,
alleging that he and McKinney had jointly purchased the land,
in pursuance of a prior oral agreement, by the terms of which
Hamilton was to contribute two-thirds of the purchase money
of the two hundred and ten acre tract and the fifty-three acre
tract and one-half of the purchase money of the twenty-seven
acre tract, and McKinney was to contribute the balance of the
money and they were to become owners of the land in the same
proportions; that he has fully paid to the commissioner his two-
thirds of the purchase money; that before the sale he and Mc-

Kinney went and examined the lands and had a full and complete understanding as aforesaid; that after the sale and confirmation of it they took possession of the land together, had surveying done, and endeavored to negotiate the sale of the timber; that no dispute arose between them in reference to their contract until after it was ascertained that the lands were very valuable; that McKinney concedes to him the right to one-half of each of the three tracts; that it was agreed between them that as soon as all the purchase money should be paid, McKinney was to execute to him a deed for his share of the lands as claimed by him; and that, although all the purchase money has been paid, he refuses to do so; and praying that the share of the lands claimed by him be decreed to him and the legal title thereto be vested in him.

At the next rule day, McKinney filed his answer to the bill, denying absolutely that any such agreement had ever been made and that Hamilton was entitled to have any part of the land; admitting payment by Hamilton of three notes given for part of the purchase money, but averring that it was done voluntarily and without his knowledge or consent and for the purpose of obtaining an advantage over the defendant and as a pretext upon which to claim part of the lands; and that Hamilton and his wife had no connection with the matter of the purchase of the lands except that they were his sureties upon said notes.

The depositions of both parties and witnesses for the plaintiff were taken and filed, and, at the hearing, the commissioner of school lands voluntarily appeared and filed an answer, admitting payment of all the purchase money and his readiness to make a deed to the parties entitled to the land, and a decree was entered adjudging the plaintiff entitled to two-thirds of the two hundred and ten acre tract and of the fifty-three acre tract and one-half of the twenty-seven acre tract, and directing Jeff Lipscomb, the commissioner of school lands, to execute a deed conveying the land to the plaintiff and defendant in the proportions stated. From this decree, McKinney has appealed.

The bill sets up an equitable title by way of express trust, and the only question is whether it is sustained by proof. Hamilton's testimony is direct, positive, consistent and supports every material allegation of the bill, and much that he

says, as well as many substantial allegations of the bill, is admitted by the defendant, notwithstanding the sweeping denial and averment of the answer. Hamilton paid seventy dollars of the cash payment of one hundred and seventy dollars and all of the three notes, making two hundred and twenty-three dollars paid by him while McKinney paid only one hundred dollars. McKinney does not deny in his testimony that he and Hamilton talked of purchasing the lands together, nor that they went together and examined a part of it before the sale, nor that they went together upon the lands several times after the sale, nor that Hamilton claimed an interest in the land at all times after the sale. On the contrary, he admits all this and says Hamilton wanted three-fifths of the lands, but at some time after the purchase he agreed to take only one-half. Hamilton is corroborated by several witnesses. Thomas P. Propst says McKinney gave him to understand that he and Hamilton had purchased the land together. A. M. Cunningham testifies that he was present when a conditional sale of the timber was made by Hamilton and McKinney to the Thomas Berger & Sons Co. S. W. Carr testifies that McKinney told him the land belonged to him and Hamilton. J. W. Bowman testifies that McKinney and Hamilton jointly employed him to survey some of the land for them, and both were with him when he started to work. Jeff Lipscomb, the commissioner of school lands, says McKinney told him that he and Hamilton were the purchasers, but that the sale was to be reported as having been made to McKinney. While parol evidence to establish a trust must be clear and unquestionable, *Armstrong v. Bailey*, 43 W. Va. 778, the evidence of this contract is undoubtedly within the requirement. It is difficult to conceive a case, presenting any controversy whatever, that could be more clearly and fully established by proof. The plaintiff's case is virtually admitted by the defendant, as a witness, the only difference being as to the respective interests they were to have. That question is settled in favor of Hamilton by the stubborn fact that he paid very nearly the exact amount of the purchase money that he says he agreed to pay. His part was two hundred and twenty-four dollars and fifty cents, and he paid two hundred and twenty-three dollars, besides having spent more time and money in the investigation of the title and location of the lands

and efforts to sell the timber than McKinney did. As to the particulars in which the testimony of McKinney differs from that of Hamilton, he is inconsistent and uncertain. Denying that there was any contract, he admits that it was his intention that they should become equal owners of the land, but does not pretend to have advised Hamilton of such intention. Taking his testimony all together, it is quite clear that he acquiesced in the proposition made to him by Hamilton, and, as Hamilton's testimony is strongly corroborated by the evidence of disinterested parties, as well as by the conduct of himself and McKinney, the conclusion that the contract was as stated by him is irresistible.

It is argued in the brief for counsel for the appellant that there could have been no such contract as is contended for by the plaintiff, because he testifies to one state of facts while the defendant testifies to another, from which difference the court is bound to say that one of the elements of a contract, namely, a complete accord or consent of minds, is lacking. If it were established as a rule that a verbal contract can never be set up and enforced when the parties do not agree in their testimony as to what the contract was, it would be absolutely impossible to enforce such a contract if either of the parties should see fit to depart from the truth in his testimony, and such a rule would strongly encourage perjury. When the parties differ as they do here, the court is bound to ascertain, if possible, whether there was such a contract as is claimed or not, although the evidence of the parties conflicts. In such case, the finding is determined by the preponderance of the evidence in favor of one side or the other, and where there is so much evidence on one side and so little on the other, as in this case, the finding is a matter of no difficulty.

In the answer, the defendant relies upon the statute of frauds, but, as the bill sets up an equitable title in the plaintiff, based upon a contract for the joint purchase of the lands and the payment by the plaintiff of a part of the purchase money, and does not set up a contract for the sale of land by the defendant to the plaintiff, and ask specific performance of that contract, the statute of frauds has no application. It is a bill to enforce an express trust. Neither an express, nor a constructive trust in lands need be created, declared or proven in

writing in this State. It may be shown by parol evidence. *Currence* v. *Ward,* 43 W. Va. 367; *Murry* v. *Sell,* 23 W. Va. 475; *Heiskell* v. *Powell,* 23 W. Va. 717; *Seiler* v. *Mohn,* 37 W. Va. 507. At the time of the agreement to purchase and actual payment of the money, the legal title was not in McKinney and it is well settled that where a person agrees before sale to purchase land in his name for another, such other party to pay the purchase money, or where a person having purchased the land, verbally agrees that if another will pay the purchase money he shall have the land, and the payment is made by such other person, a trust is created, and may be enforced without written evidence of the agreement. But if the agreement be made and the money paid after the legal title passes, the contract cannot be enforced unless it be in writing. *Currence* v. *Ward,* cited. "It is not necessary that a trust of any kind in this State, either in real or personal estate, be in writing." Hogg's Eq. Pr., s. 553.

Another objection to the decree is that the court permitted the commissioner of school lands to appear and file an answer at the hearing. As the title to the land was not in him, as was erroneously assumed in the court below, but under the control of the court in another suit, for the purpose of passing it to the purchaser, he was not a necessary or proper party. As neither the plaintiff nor the defendant had the legal title, the controversy between them was concerning the ownership of the equitable title. As was said in *Currence* v. *Ward,* cited, the equitable title constituted a sufficient subject matter for a trust enforcible in equity, and the court had power to declare the right to it as between the parties, without bringing in the legal title. This being true, and the relief between them being in no way dependent upon any matter set up by the answer of the commissioner, nor in any sense affected by his appearance or answer, the error, if any, in allowing his answer to be filed, is entirely harmless, and affords no ground of complaint against the decree. The court might well have stopped with a simple adjudication that two-thirds of the equitable title to two of the tracts and one-half of such title to the other were in Hamilton. But the decree went beyond this in directing a deed to be made on that basis. Technically, this was error. An adjudication of the equitable title would enable Hamilton, upon showing it in the

other suit, to obtain such direction, as to the deed there, where it could be properly made. *Currence* v. *Ward,* cited. But this error is likewise harmless, for, although the decree is not binding upon the commissioner, if he obeys it, he will, by so doing, only effectuate that which must ultimately be done, as a sequence and inevitable result of the adjudication upon the equitable title. If he fails to execute the deed under this decree, there can be no bar to the demand of Hamilton for a decree for it in the other suit. So the error is clearly harmless, if, indeed, so much of the decree as orders the deed is not absolutely void, as relating to a matter *coram non judice* in this suit.

That the bill does not sufficiently describe the land is the only remaining ground of complaint. It was ground of demurrer, if an available objection at all, and was waived by failure to so raise it. But as a decree of conveyance was unnecessary in this suit, as has been shown, a description by metes and bounds was not essential to the granting of relief. It sufficiently identifies the land to enable the parties, after decree in this cause, to show, in the other, with absolute certainty, how the conveyance should be there ordered to effectuate their rights as adjudicated here.

As the decree is free from prejudicial error, it is to be affirmed.

*Affirmed.*