# CHARLESTON.

Samuel Spaulding *et al. v.* C. H. Spaulding *et al.*

Submitted October 19, 1920. Decided October 26, 1920.

1. Trusts—*Oral Evidence to Establish Trust in Land Must be Free From Doubt.*

    To establish by oral evidence a trust in land, the evidence must be strong, clear and unquestionable, and free from any doubt. (p. 331).

2. Fraudulent Conveyances—*Express Trust Created to Conceal Property from Beneficiary's Creditors Will Not be Enforced.*

    If the legal or equitable owner of land causes the same to be conveyed to another in trust for him, for the purpose of covering up his property and hiding it from his creditors, present or future, equity will decline to enforce such trust, either at the suit of such owner or that of his heirs after his death. (p. 332).

(Williams, President, absent).

Appeal from Circuit Court, Mingo County.

Suit by Samuel Spaulding and others against C. H. Spaulding and others. Decree for plaintiffs, and defendants C. H. Spaulding and others appeal.

*Reversed and bill dismissed.*

*J. H. Meek, John L. Stafford* and *S. U. G. Rhodes,* for appellants.

*Ed Noonchester* and *Chas. F. Hogg,* for appellees.

MILLER, JUDGE:

The decree appealed from, upon the grounds alleged in and in accordance with the prayer of the bill, adjudged that A. J. Spaulding, paternal ancestor of the plaintiffs, was at the time of his death the owner of the equitable title to a tract of one hundred and fifty acres of land in Mingo County, and that plaintiffs are now the owners by inheritance thereof, and that the defendants C. C. Messer and S. S. Meade, purchasers from the defendant C. H. Spaulding, who held the legal title to said land, should execute, acknowledge and deliver to plaintiffs an apt and proper deed therefor, which land said C. H. Spaulding attempted to convey to them, and that upon their default therein within ninety days from the date of the decree a commissioner was thereby appointed to execute such deed on their behalf.

The bill alleges that said tract of land was originally purchased by A. J. Spaulding from John B. Wilkinson, Special Commissioner, in October 1894, who had the legal title conveyed to one Simania Messer, unmarried, a woman with whom he lived, to hold for the protection of his interest therein; that late in December of the same year, said Simania Messer becoming ill, and before her death, the said A. J. Spaulding realizing that by her death before conveyance thereof the legal title to said land would become involved and complicated, and in order to protect his interest therein caused said land to be conveyed to said C. H. Spaulding, his half brother, in whom he reposed confidence; and that although the deed to him recited the consideration of six hundred dollars paid, the fact was that the same was made without any consideration whatever, for the purpose of protecting the interest of said A. J. Spaulding

in said land, upon the express agreement beforehand between them that said C. H. Spaulding should hold the legal title thereto in trust for A. J. Spaulding, his heirs and assigns, and that the same should be conveyed to him upon request. It is also alleged that the grantees of said C. H. Spaulding had full and complete notice of plaintiffs' rights before purchasing said land.

There are other allegations of the bill respecting the subsequent dealings of A. J. and C. H. Spaulding respecting said land, the occupation thereof by the former from the time of his alleged purchase thereof in 1894 to the date of his death in September 1915, his cultivation and improvement thereof, his leasing of parts thereof to others, the cutting of timber thereon, and his joining with the said C. H. Spaulding in the leasing thereof for oil and gas purposes, his taking the rents, paying the taxes, etc., and other dealings therewith, regarded as wholly inconsistent with the theory that he was not the equitable owner of the land; and moreover it is alleged that C. H. Spaulding on several occasions during the life of the said A. J. Spaulding proposed to convey the land to him or to anyone whom he might designate to receive the same, but which was never done, and that he made frequent declarations to others that the land belonged to said A. J. Spaulding, and that he had no interest therein.

The answer of C. H. Spaulding puts in issue all the material allegations of the bill, by denying the same. He replies that at the time he purchased said land from said Simania Messer, in December 1894, he felt under great obligations to said A. J. Spaulding, who when he and some of the other children were infants and left orphans by the death of their father and mother, took them and brought them up as his own, and thereby inspired he purchased the said land from said Simania Messer, who had become indebted to others for goods purchased for a store conducted by her, and paid her therefor the sum of six hundred dollars to enable her to pay her debts, and thereafter because of his relation to his brother allowed them respectively to remain on said land until each had died, the said A. J. Spaulding in 1915, when he sold the same to

defendants Meade and Messer, and that for the same reason and to assist him in his old age he permitted the said A. J. Spaulding to cultivate the land and take a part of the farm rents and rentals accruing from oil and gas leases made, but with no agreement or understanding that he would hold the title in trust for him or to convey the same to him or to his appointees.

The evidence of plaintiffs is very unsatisfactory; much of it is oral, illegal and incompetent, consisting largely of self-serving declarations of A. J. Spaulding that the land belonged to him and that his brother held the legal title only. These witnesses are mainly the relatives of plaintiffs; and there is much impeaching testimony against them by witnesses for defendants. The documentary evidence relied on by plaintiffs consists of written leases for oil and gas joined in by A. J. and C. H. Spaulding, explained in one instance by the lessee who says that it was at his request that A. J. Spaulding joined therein, so that he might have some one near at hand to whom he could lawfully pay the rentals. He is not an interested witness. That A. J. Spaulding was allowed to take a part of the rentals is explained by C. H. Spaulding, the explanation being that it was his desire, owing to the great moral obligation he felt himself under to his brother for taking care of him in his infancy, to help him in his old age, and so also with respect to allowing him to remain on the land, cultivate it and take timber therefrom. Nearly if not all the farm tenants to whom A. J. Spaulding rented swear that he told them at the time that the farm belonged to his brother C. H. Spaulding, and a host of witnesses for defendants swear that A. J. Spaulding represented to them that the land belonged to his brother. Besides, Samuel Spaulding, the principal plaintiff now owning or claiming to own most of the interests of the other heirs, made an affidavit after his father's death that he had no interest in the land. He attempts to explain this affidavit by saying that he put no money in the land, which is quite unsatisfactory. Another piece of evidence much relied on is the record of a suit by a creditor, J. D. Spaulding against A. J. Spaulding, to which C. H. Spaulding was made

a party and did not answer, in which the bill alleged A. J. Spaulding to be the equitable owner of said land, and the commissioner to whom the cause was referred, in accordance with the allegations of the bill, reported that the equitable title was in A. J. Spaulding. But there were no pleadings in that cause between A. J. and C. H. Spaulding, and it never reached a final decree adjudging the rights of the parties, but was dismissed before final decree; and of course the record of that cause amounts to nothing as an adjudication against C. H. Spaulding. He would have had the right to answer the bill at any time before final decree, and would in all probability have done so if the case had not been settled out of court.

Reliance is also placed on the evidence of C. H. Spaulding given upon an indictment against him and A. J. Spaulding for an alleged trespass in cutting timber on a portion of the land near a division line, in which he is reported to have said that the land belonged to his brother. He explains that this testimony, not exactly as plaintiffs' witnesses quoted it, related to a particular part of the land not now in controversy, about fifteen acres, which he had told his brother he would give him if he would get the line established as he designated, which he did.

The long continued occupancy of the land by A. J. Spaulding and his dealings with it as alleged is of course the most forceful fact in favor of plaintiffs, but this fact is not inconsistent with the claims of defendants. It is proven with respect to the building of the house on the land that a large portion of the material used was furnished by C. H. Spaulding from a mill purchased by him and operated by another, and that he paid for the labor, outside of that done by his brother A. J. Spaulding. At that time A. J. Spaulding was indebted to him for money advanced to help pay his debts, and afterwards he paid much money for him and to him. His evidence is that even after his brother's death he paid out for him as much as $237.00, and in addition paid his funeral expenses.

Some reliance is placed by plaintiffs on the fact, as to which there is some evidence, that C. H. Spaulding, after the death of his brother took out of his trunk tax tickets and other papers,

all of which he denies, and says that all papers secured were turned over to him voluntarily by a member of his brother's household, that though his brother had the tax tickets, they were in his own name and that the taxes were paid often out of money actually provided by him and otherwise out of the rents his brother had agreed to pay him, namely fifty dollars per year.

Opposed to the evidence of plaintiffs of the self-serving declarations of A. J. Spaulding and such documentary evidence as is relied on, is the evidence of a host of disinterested witnesses for defendants of many declarations of A. J. Spaulding in his life time, that this land belonged to his brother and that he was only his tenant. In addition we find in evidence A. J. Spaulding's sworn affidavit made in 1898, filed in the case of *Waldron* v. *Messer,* in which among other things he swore that in the month of December 1894 his brother C. H. Spaulding purchased the land from Simania Messer for $600.00, which he paid her therefor, and that he took open and notorious possession thereof, and had ever thereafter held possession thereof.

Moreover, the fact of this purchase and payment by C. H. Spaulding is proven, not only by his testimony in the case, but by several disinterested witnesses present who saw the money paid over, and there is no contradiction of this fact, except the evidence of one or two witnesses who say that A. J. Spaulding said to them afterwards that he only had the money a few minutes until it was returned to C. H. Spaulding, a most improbable story when considered in connection with the fact that the former was impecunious, his paramour in debt and threatened by her creditors. There is not a particle of evidence to overcome the positive evidence of the purchase and payment for this land by defendant C. H. Spaulding, and it must be regarded as an established fact in the case. We can not go further into the details of the evidence.

The law is well settled in this and other states that to establish a trust in land by oral evidence, the evidence must be strong, clear and unquestionable. *Gilbert* v. *Lawrence, 56* W. Va. 281; *Hudkins* v. *Crim,* 64 W. Va. 225; *Taylor* v. *Delaney,*

118 Va. 203; *Berry* v. *Berry,* 119 Va. 9; *Fleenor* v. *Hensley,* 121 Va. 367.    We find no such clear and convincing evidence in this case.    There is no evidence of any kind showing or tending to show that A. J. Spaulding furnished the money to pay Messer for the land, nor that he paid it to C. H. Spaulding, except the self-serving declaration sworn to by the one witness whose testimony has already been referred to, not competent and wholly insufficient to establish the fact.

Failure of proof to establish the trust relationship alleged in the bill would be sufficient of itself to reverse the decree, but if this were not true, another ground relied on would probably be sufficient to do so.    The bill alleges that the taking of the title, first in the name of Simania Messer, afterwards in the name of C. H. Spaulding, was to protect the interests of A. J. Spaulding therein.    And the evidence of S. W. Munsey, who proved that he was the legal adviser of A. J. Spaulding, is that he advised his client to put the legal title to the land in some one, preferably his brother, C. H. Spaulding, to protect him from his present or future creditors.    He admits C. H. Spaulding was not present and took no part in their consultation.    If such was the object of taking of the title in the name of his brother, it was a fraudulent transaction, and neither A. J. Spaulding nor his heirs would be entitled in a court of equity to undo the fraud and recover the property.    *Cain* v. *Cox,* 23 W. Va. 594; *McClintock* v. *Loisseau,* 31 W. Va. 865; *Spooner* v. *Hilbish,* 92 Va. 333.

Wherefore, our conclusion is to reverse the decree and enter a decree here dismissing the bill.

*Reversed and bill dismissed.*