THOMAS W. DYE

*v.*

GEORGE A. DYE *et al.*

(No. 9791)

Submitted April 10, 1946.  Decided May 7, 1946.

*L. D. Archer* and *T. M. McIntire,* for appellants.
*Harper & Baker* and *J. H. Smith,* for appellee.

Fox, JUDGE:

The plaintiff, T. W. Dye, became surety on the bond of W. A. Carpenter as Sheriff of Roane County, and said sheriff failing to account for certain moneys which came into his hands as sheriff, an action on said bond was instituted by the County Court of Roane County against the said Carpenter, T. W. Dye and others in the Circuit Court of Roane County, in which judgment was rendered in favor of the plaintiff against the defendants in said action for $33,892.50. Subsequently, a suit in equity was instituted in the Circuit Court of Roane County against the said Carpenter, and the sureties on his bond, to subject to sale real estate owned by such sureties, including T. W. Dye; and on January 28, 1932, a decree was entered by said court decreeing the sale of certain real estate owned by T. W. Dye, including a tract of 94½ acres, situated on Reedy Creek, in Reedy District of Wirt County, and S. P. Bell was appointed a special commissioner to make such sale. After the entry of said decree, and some time before the sale of Dye's real estate thereunder, it is contended by plaintiff that he entered into an oral agreement with his brother, the defendant G. A. Dye, by which the said G. A. Dye agreed to purchase

the tract of 94½ acres, and pay for the same, and later permit it to be redeemed by the plaintiff by payment of the purchase price required to be paid at such sale with interest. The 94½ acres of land was sold by said special commissioner at the front door of the court house of Wirt County, on April 8, 1933, and purchased by defendant, G. A. Dye, for the sum of $1,525.00. The purchaser took possession of said land, and held the same for approximately ten years without any request on the part of plaintiff herein to reconvey the same to him. Some time in the year 1943, plaintiff requested of defendant a conveyance of said land, and offered to pay to him the amount of money expended in its purchase with interest, subject to an accounting as to rents and profits accruing to the said purchaser while he had the land in possession. The defendant refused to reconvey the land, and this suit followed. By decree entered in the cause on September 10, 1945, the relief prayed for by plaintiff was granted, and the cause referred to a commissioner for an accounting in order to ascertain the amount of money which the plaintiff would be required to pay to defendant to effect a redemption of said land. From that decree we granted this appeal.

The questions presented on the record now before us are four in number: (1) Was the alleged oral agreement between plaintiff and defendant sufficient to create a trust, or was it merely a contract of sale; (2) if such oral agreement created a trust for the benefit of plaintiff, was the undertaking of the defendant a declaration of trust, as contemplated by Code, 36-1-4; (3) if the oral agreement aforesaid created a trust in favor of plaintiff, but fell short of a declaration of trust as contemplated by Code, 36-1-4, is the same enforceable; and (4) assuming that an enforceable trust was created by the oral agreement aforesaid in favor of plaintiff, does his alleged illegal conduct in respect of the suppression of bidding, at the sale made by the special commissioner to the defendant, bar relief to him? These questions will be considered in the order stated above.

First: It is important to determine exactly what plaintiff's claim is. In his bill plaintiff says:

"Plaintiff further says that a few days prior to the time of the sale of said tract of land he went to the home of defendant, G. A. Dye, who was and is a brother of the plaintiff, and informed his said brother, G. A. Dye, that he desired to have some one purchase said tract of land for his, plaintiff's benefit, and hold the same as security for the re-payment by plaintiff of the amount necessary for the purchase of said land, with interest thereon until such time as plaintiff was able to make such reimbursement; and so plaintiff says that on that occasion his said brother, defendant G. A. Dye, professing to be in great sympathy with the plaintiff in the sacrifice of practically all his property by reason of his liability on said sheriff's bond, immediately consented and agreed with the plaintiff that he would furnish the means for the purchase of said tract of land and would bid for the same at said judicial sale to be made by said S. P. Bell up to a reasonable amount necessary for the purchase of said land, and that he, said G. A. Dye, after purchase was so made by him, would take a deed for the legal title to said tract of land and would hold the same for plaintiff until such time when the said plaintiff would be able to repay to him whatever sum he, said G. A. Dye, would have to pay for said land at such sale, with interest thereon until the time he should make such repayment, and at that time assured plaintiff that upon the repayment to him of whatever sum he would be required to pay for said land, with the interest thereon from the date of said sale to the time of such repayment, he would execute and deliver to plaintiff a proper deed for said 94½ acres of land, and said arrangement and agreement, promises and undertakings of the said G. A. Dye were then and there accepted by the plaintiff as satisfactory, and said plaintiff relied upon and trusted his said brother, defendant G. A. Dye, and confidently believed that he would fully and completely perform his said agreement so made with the plaintiff as aforesaid; that plaintiff, implicitly relying upon said arrangements and promises with his said brother, made no further arrangements to protect his rights and interests in said land."

In plaintiff's testimony in this cause, when he was asked to state what the arrangement was between him and his brother, he said, "The arrangements was he was to buy it and when I got able to redeem it back from him, I was to pay him back and he was to make me a deed for the land." He was then asked, "Was anything said about interest", to which he answered, "I was to pay him principal and interest." He was then asked, "From what date and to what date", to which he replied, "From the time he got possession of it until I redeemed it." He then stated that he agreed to this arrangement and relied upon it.

It would be observed that the plaintiff advanced no money in the purchase of this land by defendant, nor was it contemplated that he should. The alleged agreement was that defendant should pay the consideration, and upon being reimbursed therefor, with interest, he was to convey the land to plaintiff. Consideration is not necessary to sustain an express trust. "Consideration is not necessary to the creation of a trust, or, in other words, consideration is not necessary to a trust that is executed in the sense of being perfectly created, whether by declaration or transfer." 54 Am. Jur. 51. So if an express trust was, in fact, created by the alleged agreement, the fact that defendant paid for the land, and plaintiff, at the time of the agreement, paid nothing, is not material; but it is material to determine whether the agreement, as stated in plaintiff's bill and in his testimony, was anything more than a contract for the sale of land. If it was no more than this, then, the agreement being oral, its enforcement is barred by Code, 36-1-3, which provides: "No contract for the sale of land, or the lease thereof for more than one year, shall be enforceable unless the contract or some note or memorandum thereof be in writing and signed by the party to be charged thereby, or by his agent. But the consideration need not be set forth or expressed in the writing, and it may be proved by other evidence." This was originally a part of what is termed the "statute of frauds", and in

the 1931 revision of the Code, was transferred from what is designated in such revision "statute of frauds", Code, 55-1-1, to Chapter 36 of such Code, dealing with estates in property.

We are of the opinion that the alleged agreement set up in plaintiff's bill, and stated by plaintiff in his testimony, is nothing more than an agreement of sale, between plaintiff and defendant, that plaintiff would purchase such land and hold title thereto, and that upon being reimbursed for the money expended in its purchase, with interest, he, the defendant, would convey the same to plaintiff. The situation would be different had the plaintiff advanced the money with which said land was to be purchased. In such a case there would have been a resulting trust. Here the transaction was nothing more than an agreement and understanding between these two brothers that one was to buy the land, and that he would permit it to be redeemed or purchased at a later date upon being reimbursed. That was a simple contract to sell and convey, and nothing more. Plaintiff had no interest in the land except a mere contract for its purchase. That contract was indefinite as to time, but, had it been in writing, would probably be construed to permit of such redemption within a reasonable time. But not being in writing, it is, we think, unenforceable, under the section of the statute quoted above. Whether it is unenforceable under subsection (f), Section 1, Article 1, Chapter 55 of the Code, the statute of frauds, which provides that no action shall be brought "Upon any agreement that is not to be performed within a year", it is not necessary to decide. It is, of course, possible that this agreement could have been performed within a year; but the circumstances of this case indicate that it was not contemplated that it was to be performed within such period. However, we do not decide this point.

Second: If we hold that the alleged oral agreement between plaintiff and defendant operated to create a trust in favor of plaintiff in the tract of 94½ acres of land, we are led to inquire whether the undertaking, on

the part of defendant, G. A. Dye, was a declaration of trust, as contemplated by the first sentence of Code, 36-1-4, which reads: "No declaration of trust of land shall be enforceable, unless it be made in writing, signed by the person who declares such trust or by his agent." The quoted part of Section 4, is, in effect, a recognition of Section 7 of the statute of frauds, as it was first enacted by the English Parliament in 1677, 29 Charles II. In *Troll v. Carter*, 15 W. Va. 567, it is stated: "The 7th section of the English statute of frauds, 29 Car. II, ch. 3, enacts that all declarations and creations of trust or confidences in any lands, tenement or hereditaments, 'shall be manifested and proved by some writing signed by the party who is by law to declare such trust, or by his last will in writing.' " The English statute of frauds, not being treated in this country as a part of the common law, did not become effective in the American states until adopted by the legislatures of the various states. Many of them, probably a majority, have, in effect, adopted Section 7, but, until the 1931 revision of our Code, it was never recognized or adopted in this State. For that reason, it has always been held in this State and in Virginia, that a trust in real estate could be created by parol, provided clear and convincing proof thereof could be produced. In this connection it is well to state that an oral trust in land must always be established by clear and convincing evidence. *Troll v. Carter, supra; Armstrong v. Bailey*, 43 W. Va. 778, 28 S. E. 766; *Spaulding v. Spaulding*, 87 W. Va. 326, 104 S. E. 604; *Vance v. Harper*, 109 W. Va. 747, 56 S. E. 118; *Boggs v. Boggs*, 125 W. Va. 600, 25 S. E. 2d 631.

When the Legislature enacted Code, 36-1-4, it, in effect, adopted Section 7 of the original English statute of frauds. The Legislature also did more by that section. It provided: "If a conveyance of land, not fraudulent, is made to one in trust either for the grantor or a third person, such trust may be enforced, though it be not disclosed on the face of the conveyance, nor evidenced by a writing: Provided, however, That trusts arising by

construction or operation of law shall not be subject to the provisions of this section." We have, therefore, this situation: If a person acquires and retains title to land, but chooses to hold the same in trust for another, he must declare in writing his intention to do so; but if he transfers his title to another, to be held in trust either for himself or a third person, he may do so by parol, and no writing is required to make the same effective. Here there was no conveyance by plaintiff to defendant of the title to the land involved. The legal title was vested in and was retained by defendant. Therefore, the right to create a trust by parol, as provided for in the enactment quoted above, does not exist. If there was any trust created, it must be based upon the agreement of the defendant that he would hold the land for the benefit of plaintiff; and we think, necessarily, that was a declaration of trust, and comes within the first sentence of the statute quoted above, requiring such a declaration to be in writing.

Third: If we should hold that the alleged oral agreement between plaintiff and defendant created a trust in favor of the plaintiff, and still fell short of a declaration of a trust within the contemplation of Code, 36-1-4, is such a trust enforceable in this State? There have been a number of decisions by this Court which, in our opinion, leave the question in a confused and uncertain state. This confusion is clearly recognized in an article on "Trusts and the Statute of Frauds" written by Dean Madden, Vol. 31, W. Va. Law Quarterly 166. In *Hardman v. Orr*, 5 W. Va. 71, a person desiring to provide for a natural daughter procured another person to purchase land in his own name, and have the same conveyed to him, with an oral agreement that it was to be held by him for a reasonable time, and then conveyed directly to the natural daughter. The consideration for the land was paid by the father of the natural daughter. It was held that a perfected and complete gift was made to the daughter which might be enforced against the trustee and his heirs, and that it was proper to prove the object

762

of the trust by parol evidence. There, it will be observed, a trust was created for the benefit of a third person. In *Nease v. Capehart, Executor*, 8 W. Va. 95, it was held: "When a debtor has conveyed land to a trustee to secure a debt, and afterwards another person and the debtor agree that the former shall purchase the land and hold it as a security for the purchase money he pays, and accordingly the debtor acquiesces and the other purchases the land, the transaction constitutes a trust which a court of equity will enforce." Here it will be noted that a third party, the trustee, is a party to the transactions. In *Troll v. Carter, supra,* it was held:

> "If a party obtains a deed without any consideration upon a parol agreement that he will hold the land in trust for the grantor, such trust will not be enforced, as it would violate the statute of frauds and this general rule, to permit parol evidence to establish such a trust.

> "But if a party obtains a deed without any consideration upon a parol agreement that he will hold the land in trust for third parties, such a trust so proven will be enforced in a court of equity, as to permit a party to hold the land so obtained for his own use would be to permit the grantee to commit a fraud.

> "If a party obtains a deed for a valuable consideration, but agrees by parol with the grantor, at the time the deed is made, that he will hold the land in trust for third parties, whether a court of equity will enforce such a parol trust is questionable, and the decision of this point in this case is waived."

This decision would seem to hold that a trust may be enforced for the benefit of a third party, but not in favor of the grantor; but in *Titchenell v. Jackson,* 26 W. Va. 460, Judge Green, who wrote the opinion in the *Troll* case, says, by way of *dictum,* "In this last case I express the opinion, that a grant can not be affected with an oral trust for a third person, merely because there was a parol contract, that it should be so affected. But this was confessedly an *obiter dictum,* the court declining in

that case to decide this point. The whole subject is fully considered in that case; and all the views I have above expressed are fully sustained by it and by the numerous authorities cited therein." *Titchenell v. Jackson, supra,* was a case in which there was a written agreement. In *Seiler v. Mohn,* 37 W. Va. 507, 16 S. E. 496, it was held that one who entered into an executory contract for the purchase of land and takes possession of the same, but before title is conveyed to him, or any part of the purchase money is paid, he agrees with others that if they will pay the purchase money they may share equally in the property in its improved condition in the proportion of one-third each, and the said latter parties pay the purchase money and take a deed for the land, a trust as to one-third of said property results in favor of the first party, he having held the same in his possession, erected buildings and made valuable improvements thereon. It was held that trusts of such character were exempt from the statute of frauds, and the agreement proved by parol. *Currence v. Ward,* 43 W. Va. 367, 27 S. E. 329, is a leading case in this State on the subject of trusts created by agreements growing out of judicial sales. This was a case where Currence, being in financial difficulties, entered into an agreement with the Wards that they would purchase Currence's real estate at a contemplated judicial sale, and hold title to the same for the benefit of Currence. Currence paid a part of the purchase money, and the land was resold by a special commissioner, and again purchased by the Wards, and finally the Wards sold the land to a third party, Conrad, and, presumably, out of the proceeds of such sale, paid the remaining purchase money due the special commissioner. All the arrangements were by parol. Currence instituted his suit, and in the circumstances of that case it was held:

"Where one before a judicial sale agrees to buy in the land in his name for the benefit of the debtor, the debtor to pay the purchase money, and keep the land, this is an express trust, enforceable in equity. A second sale under decree and purchase by same purchaser will not defeat the trust."

And it was held:

"Neither an express nor constructive trust in lands need be created, declared, or proven in writing in this State, but may be shown by oral evidence."

It further holds:

"Where one buys land under executory agreement, and afterwards, before legal title is passed, verbally agrees that if another will pay the purchase money he shall have the land, and that other does so, the trust is enforceable in equity. No agreement or payment, after legal title passed, will be valid without writing."

In the case at bar, there was no agreement to pay either before or after the legal title passed to the defendant. The only agreement was permissive in character, creating a right in plaintiff to redeem his land. Apparently, the *Currence* case holds that payment after legal title passes created no right in the land involved unless there was a writing. *Hamilton v. McKinney,* 52 W. Va. 317, 43 S. E. 82, is authority for the proposition that, "Neither an express, nor a constructive trust in lands need be created, declared or proven in writing in this State. It may be shown by parol evidence." It was also stated:

"At the time of the agreement to purchase and actual payment of the money, the legal title was not in McKinney and it is well settled that where a person agrees before sale to purchase land in his name for another, such other party to pay the purchase money, or where a person having purchased the land, verbally agrees that if another will pay the purchase money he shall have the land, and the payment is made by such other person, a trust is created, and may be enforced without written evidence of the agreement. But if the agreement be made and the money paid after the legal title passes, the contract cannot be enforced unless it be in writing. *Currence v. Ward,* cited. 'It is not necessary that a trust of any kind in this State, either in real or personal estate, be in writing.' Hogg's Eq. Pr., s. 553."

*Ruckman v. Cox,* 63 W. Va. 74, 59 S. E. 760, was a case where Ruckman, the owner of two tracts of land,

decreed to sale by a special commissioner, induced one Leggett for consideration of one hundred dollars, to bid in the land and convey it to Ruckman's wife for the purchase money paid by Leggett for said land. In some way Cox became associated with Leggett in the transaction. The land was purchased at the judicial sale for $2205.00. Leggett and Cox failed to carry out their agreement, and in a suit by the wife to enforce the same, this Court held: "Where, at the sale of land under judicial decree to satisfy claims of judgment creditors, a third person agrees with the owner, in consideration of one hundred dollars and repayment to him by the latter of the purchase money, to bid in the land and convey it to the wife of the owner, such third person is thereby constituted trustee of an express trust in favor of the beneficiary so designated in said agreement." In the body of the opinion the Court said: "The contract alleged and established by proof, made Leggett and Cox trustees of an express trust, growing out of the agreement and the trust and confidence reposed in Leggett by Dorothy Ruckman. The rules and principles controlling such cases have been frequently declared in the decisions of this Court; and it would serve no good purpose to do more now than to refer to them." The case refers to *Nease v. Capehart, supra; Seiler v. Mohn, supra; Currence v. Ward, supra; Hamilton v. McKinney, supra;* and *Hatfield v. Allison,* 57 W. Va. 374, 50 S. E. 729. This case comes very near the case at bar, but the distinction between the two is marked. In *Ruckman v. Cox, supra,* the trust was for the benefit of a third party, while here the rights of only the former owner and the purchaser of the land are involved. In *Gay v. Gibson,* 85 W. Va. 226, 101 S. E. 365, it was held that a trust was created where it was alleged that land was purchased by one partner for the benefit of another. This brings in another question, namely, that of the confidential relationship which exists in the case of a partnership. In *Bennett v. Bennett,* 92 W. Va. 391, 115 S. E. 436, a proposition was made in writing to a husband proposing to purchase his wife's separate real

estate at a trustee's sale then about to be made, and negotiations were then conducted, leading to a writing, wherein the proponent agreed to buy the land at the trustee's sale and rent the same to the husband, and that the land should be resold by him, and the profits equally divided with the husband. This proposition was accepted by the husband and wife, and in pursuance thereof the land was bought by the proponent at the trustee's sale and deed made to him. It was held that an express trust was thereby created in favor of the wife for one-half of the net profits derived from the subsequent sale of the land, and in this connection it was held that: "The statute of frauds does not apply to an express trust as the basis of an equitable interest in real estate."

On the other hand, in *Nash v. Jones,* 41 W. Va. 769, 24 S. E. 592, it was held that, "Where a man merely employs an agent to buy an estate, who buys it for himself, and denies the trust, and no part of the purchase money is paid by the principal, and there is no written agreement, he can not compel the agent to convey the estate to him, as that would be in violation of the statute of frauds." In the case at bar, if defendant should be treated as the agent of plaintiff in the purchase of the 94½ acres of land, and the plaintiff paid no part of the purchase money, he could not require reconveyance from his agent unless an agreement to do so was in writing. In *Woods v. Ward,* 48 W. Va. 652, 37 S. E. 520, the claimant of the fee in a remainder of a valuable farm, the conveyance for which had been set aside by a decree of the circuit court, it was held:

"T. is the owner in fee of the remainder in a valuable farm, the deed of conveyance of which has been set aside by decree of the circuit court. I. sets up and attempts to prove a parol agreement made between T. and I., whereby, in case I. would join T. in appealing the cause to the supreme court of appeals, and pay one-half of the fees, expenses, and costs thereof, and if they succeeded in reversing the decree and restoring T. to his rights in the land, T., in consideration thereof, was to convey to I. one-

half of his interest in the land. I. paid no money, and no part of the fees, expenses or costs. *Held,* that no resulting trust could arise in favor of I., and, further, that, the right of I., being solely dependent on the verbal promise of T., is within the statute of frauds."

*Floyd v. Duffy,* 68 W. Va. 339, 69 S. E. 993, is a case where certain valuable lots in the City of Charleston were conveyed by one McClung to Duffy, under an agreement that the lots were to be sold and the purchase money paid from the proceeds of such sales. It was shown by parol evidence that Floyd was associated with Duffy as an equal partner in this transaction. Duffy proceeded to and did sell a great number of lots, and out of the proceeds of sales, and out of his own private funds, paid the purchase money in full. Floyd, after the death of Duffy, instituted his suit, setting up the oral agreement that he was to share in the profits of this transaction. He was permitted to recover, not upon the theory of the enforcement of a trust independent of other considerations, but particularly upon the theory of partnership between the parties, and upon the equities existing outside of the contract. It was held:

"A conveyance of the legal title to land, obtained by the grantee in pursuance of a verbal agreement between himself and a third party, prior in date to the deed or contemporaneous therewith, for their common benefit, no purchase money having been paid by either of them, and it having been the intention and agreement of the parties to sell the land in small portions and pay for the same out of the proceeds thereof, as sold, and reconvey all that should remain unsold after a certain date, is not within the statute of frauds; and, by virtue thereof, the grantee took the legal title in trust for himself, the grantor and such third party."

And further:

"If, in pursuance of a prior or contemporaneous agreement of copartnership to purchase and sell land for profit, one of the parties obtain a conveyance of the land to himself, proof of such agree-

ment and conveyance, pursuant thereto, establishes a trust in the lands in favor of the other partner, not inhibited by the statute of frauds."

Notwithstanding this holding, the Court in the body of the opinion, and possibly by way of *dictum*, had this to say:

"By the great weight of authority, if not, indeed, by all courts, an agreement on the part of one pur-. chasing land with his own money and taking the conveyance in his own name, to hold it in trust for another person, or to re-convey it to the grantor, is within the statute of frauds. 15 A. & E. Enc. Law 1188. . Likewise, if a voluntary grantee in a conveyance orally agree to hold the land in trust for the grantor, or re-convey it upon demand or to hold in trust for, or convey to, a third person, the agreement is generally held to be within the statute of frauds, unless circumstances exist, constituting an equity, such as confidential relationship between the parties or fraud in the procurement of the conveyance."

Then, after discussing a number of cases, most of which have been referred to in this opinion, the Court further says:

"The decisions of this Court above referred to leave undecided the question, whether an agreement on the part of the grantee, who has paid a valuable consideration for the land, to hold it in trust for a third party, is within the statute, but, as we have shown, it is held by the great weight of authority to be so, and we think this conclusion accords with reason and principle. If such a case is not within the statute, a trust may be engrafted, by parol evidence, upon almost any conveyance. Proof of such an agreement is, as we have said, nothing short of a contract to sell and convey land. While the earlier cases do not decide it, *Nash v. Jones*, 41 W. Va. 769; *Currence v. Ward*, 43 W. Va. 367, and *Woods v. Ward*, 48 W. Va. 652, seem to settle the question in accordance with the view here expressed."

In view of these decisions, although there are some contradictions and inconsistencies therein, we do not think they require us to hold that an express trust is cre-

ated in circumstances such as are presented in the case at bar. As the law was before the enactment of Code, 36-1-4, an oral trust in land might be created for the benefit of a third party, because not necessarily a contradiction of a deed. When such a trust was created for the benefit of a third party, the interest of the grantor, or the person who may declare the trust, ended, and both the legal title and the beneficial title passed to others; but in case of a trust attempted to be created by an oral agreement between the former owner and one who purchases, pays for and takes title to the land, a different situation is presented and one not covered by any of the decisions of this Court cited above, or which we have been able to find. "An express trust springs from the agreement of the parties; a constructive or resulting trust from the construction of equity in order to satisfy the demands of justice." *Keller v. Washington et al.*, 83 W. Va. 659, 98 S. E. 880. There are broad statements in our decisions that an equitable trust in land may be created by parol, but there are others in which that statement would seem to be denied or, at least, limited, generally on the ground that the situation presented is one covered by the statute of frauds. Our decisions prior to the enactment of Code, 36-1-4, certainly support the theory that an oral trust in real estate for the benefit of a third party might be created by parol; but it is not certain that where it is otherwise created by the owner of land, it can be done by parol. If it amounts to a declaration of trust, it certainly comes within Code, 36-1-4. In our opinion, as our statute now stands, the only permissible way of creating an oral express trust in land is where the grantor makes a conveyance of land, and the grantee agrees to hold the land in trust for the benefit of the grantor or a third party. Code, 36-1-4, seems to exclude any other character of trust created by oral agreement or declaration. On the whole, we are of the opinion that plaintiff is not entitled to enforce the alleged express oral trust for which he contends.

Fourth: The remaining question is whether in any event the plaintiff is entitled to enforce his claim on account of the manner in which the alleged trust arose. If there is one thing settled in this State by our decisions, it is that sales, conducted under decrees of our courts, must be free from all conduct of any character, which tends to suppress bidding, or which interferes, in any manner whatsoever, with the full, fair and free sale of property within the control of the court. That there was not such a free, fair and unrestricted sale of the 94½ acres of land involved in this suit is manifest from the record and is, as we think, shown by the plaintiff's own case. Plaintiff was unfortunate enough to have his property decreed to be sold by reason of his becoming surety for a friend. As is natural in such a case, he felt himself justified in taking any steps possible to lessen the blow. Apparently, he wanted to recover at least a part of his real estate, and particularly the 94½ acres. In his distress he went to his brother, G. A. Dye, and according to his statement, which is corroborated by a preponderance of the testimony, the brother agreed to buy this particular tract of land and permit him to redeem the same at a later and indefinite date. Then, it clearly appears, that, following this agreement, which, we think, was made, a systematic effort ensued to purchase this particular property at the lowest price possible. Plaintiff alleges, and we think establishes, that G. A. Dye attempted to influence prospective bidders not to make bids, explaining that he expected to purchase the property for his brother. Dye denies this, but the evidence is clear that he was desirous of purchasing this property for the benefit of his brother, and that this fact became generally known, and on the day of sale it appears that that was generally discussed by those present at the sale. How far we may rely upon understandings may be questioned, but we do not have to rely upon outside witnesses or general understandings. The plaintiff himself confesses to his own participation in an effort to prevent one particular person from bidding on the property. The plaintiff was asked if he had any discussion with his brother on the day of the sale about

the sale of the property, and answered, "Well, there in the courthouse yard, he [G. A. Dye] came to me and told me that a man that ran an automobile business—I don't recall his name—was going to bid on the land, so we sent Mr. J. Henry Smith out to see this man, and the man said he would not come and bid on it. I believe the man's name was Mill, if I am not mistaken." He was then asked, "You say 'We sent J. Henry Smith'. Who do you mean", to which he answered, "I mean my brother, George, and I." He was then asked, "You mean the dedendant", to which he answered, "Yes, sir." He was then asked, "What was the purpose of sending Mr. Smith to this person in regard to his bidding on the lands", to which he replied, "Well, we didn't want the price to go up too high so it wouldn't cost me so much to get it back." He was then asked, "I believe you say that your brother joined you in sending Mr. Smith", to which he answered, "He did." Counsel for plaintiff contends that this conduct on the part of the plaintiff had nothing to do with the alleged trust agreement; that it was many weeks before the sale; but it required the sale of the property, and purchase thereof by G. A. Dye, to bring the alleged trust agreement into being and force. Up to that time it was merely an agreement to do something, and the purchase from the special commissioner was a compliance with the agreement, and it was only then that the plaintiff obtained any character of right. His conduct in contributing to the suppression or restriction of bidding was part and parcel of the transaction necessary to create any right in him.

But it may be said that other persons made bids on the property, and that with it all the property sold for a fair price, and no one was prejudiced. Plaintiff alleges in his bill that the tract of 94½ acres of land, at the date of its sale, was worth twice the amount G. A. Dye bid for it. He testifies that the land, at the date of the special commissioner's sale, was worth four thousand dollars. Plaintiff introduced four witnesses, each of whom testified that the reasonable value of the land at the date of sale

was three thousand dollars. True, defendant introduces witnesses who testify, in effect, that the $1525.00 he paid for the land was a fair price; and the value is fixed by them at from twelve to fifteen hundred dollars. Certainly, the plaintiff cannot escape his own allegations and the proof he produces. The facts he alleges, his own testimony, and that of the witnesses he produced, indicate clearly that the property sold for less than its value, and it is fair to assume that the efforts made by himself and G. A. Dye to suppress bidding contributed to that result. It may be that such inadequancy of price would not be sufficient, in an ordinary case, to justify a court in setting aside the sale on that ground, but that is not material on the issue here presented. Plaintiff's conduct was against public policy. Courts will not permit their processes to be hampered or interfered with to the prejudice of creditors or other interested parties, and will not permit anyone to reap the benefits of a contract or an agreement, the carrying out of which involves his complicity in any fraudulent act, or any conduct inhibited by sound public policy. A party guilty of fraud in a transaction on which he relies for recovery can have no relief in equity against another person, even though that person may be equally guilty. Equity will grant no relief to either party, and it is settled law in this State that when a contract has been entered into through fraud, or to accomplish any fraudulent purpose, a court of equity will not, at the suit of one of the parties participating in the fraud, compel its enforcement. It will leave such parties in exactly the position in which they place themselves by their own acts, and will refuse affirmative aid to either. *McClintock v. Loisseau,* 31 W. Va. 865, 8 S. E. 612; *Stout v. Philippi M. & M. Co.,* 41 W. Va. 339, 23 S.E. 571; *Edgell v. Smith,* 50 W. Va. 349, 40 S. E. 402; *Poling v. Williams,* 55 W. Va. 69, 46 S. E. 704; *Hall v. Hall,* 69 W. Va. 175, 71 S.E. 103; *Haymond v. Hyer,* 80 W. Va. 594, 92 S. E. 854; *State v. Altizer Coal Land Co.,* 98 W. Va. 563, 128 S. E. 286; *Chicago Towel Co. v. Reynolds,* 108 W. Va. 615, 152 S. E. 200; *Wheeling Dollar Savings*

& *Trust Co. v. Hoffman*, 127 W. Va. 777, 35 S. E. 2d 84. The last case cited is authority for the proposition that it is not necessary to plead fraud as a matter of defense. If at any stage of the case fraud becomes apparent, relief will be denied to the participant therein. There can be no question but that a contract, the carrying out of which involves suppression of bidding at a judicial sale is inhibited by law, because against public policy. A party whose rights depend upon a transaction brought about through suppression of bidding at a judicial sale cannot recover. *Horn v. Star Foundry Co.*, 23 W. Va. 522; *Ralphsnyder v. Shaw*, 45 W. Va. 680, 31 S. E. 953; *Henderon v. Henrie*, 61 W. Va. 183, 56 S. E. 369; *Cline v. Bailey*, 85 W. Va. 139, 101 S. E. 171. In the case at bar the evidence clearly shows that plaintiff and defendant were involved in an effort to suppress bidding on the 94½ acres of land, and that their purpose was to purchase the land at the lowest price possible. This operated as a fraud upon the then existing creditors of plaintiff. True, they are not here complaining, but equity is not concerned with that point. What concerns it is that the processes of courts of equity are being fraudulently interfered with. It denies affirmative relief to participants in such fraud on the ground of public policy, and is not concerned with the relative guilt of either party, or whether a defrauded creditor is complaining. The intent and purpose of the rule is to assure that sales under judicial decrees and processes shall be fairly conducted. We are of the opinion that the proven conduct of plaintiff in respect to the judicial sale conducted on the 8th day of April, 1933, bars him from any relief in this suit.

For the reasons above set forth, the decree of the Circuit Court of Wirt County is reversed and plaintiff's bill dismissed.

*Reversed.*