ANNA B. CAIN

*v.*

P. J. KEELEY, *Admr., etc., et al.*

(No. 9818)

Submitted October 1, 1946. Decided December 17, 1946.

*Joseph J. Madden,* for appellants.

*B. J. Pettigrew, Alan G. Bolton* and *John A. Cain,* for appellee.

Fox, Judge:

In this suit plaintiff seeks the specifiic performance of an alleged agreement made by her with C. P. Keeley, now deceased, relating to certain real estate properties situate in Randolph County, purchased by the said Keeley at a judicial sale at the May term, 1940, of the circuit court of said county, under an alleged agreement by which he was to purchase said properties, and permit them to be later redeemed by plaintiff upon the payment of the purchase price paid therefor, with interest.

The agreement under consideration was a verbal one. According to plaintiff's bill, filed at September rules, 1943, she and C. P. Keeley made an agreement that certain real estate, of which Joseph Cain, husband of plaintiff, had died seised, should be purchased by plaintiff "with the express understanding that title would be vested in him [Keeley] until such time as plaintiff could redeem the said real estate from him by the payment to him of said purchase price with legal interest on his moneys invested." Under this agreement, as plaintiff alleges, she purchased at a sale made by E. L. Maxwell,

special commissioner, during the May, 1940, term of the circuit court of said county: (1) Lots Nos. 5, 6 and 12 of Block 4 in the South Elkins Improvement Addition to the City of Elkins; (2) a tract of one hundred acres of land situate on Middle Fork River in said county; and (3) a tract of thirty-nine acres of land, situated east of the Middle Fork River in said county, at the aggregate price of six hundred and ninety-five dollars. She also purchased at the same sale the one-half interest in what is known as the "Cain Building" located on Davis Avenue in the City of Elkins for the price of fifteen thousand and ten dollars. According to the bill, the purchase was made in the name of C. P. Keeley. Admittedly, C. P. Keeley paid the purchase price for which the properties aforesaid were sold, and on August 12, 1940, the lots aforesaid, and the two tracts of land above described were conveyed by E. L. Maxwell, special commissioner, to C. P. Keeley, and the title thereto remains vested in his heirs, he having died on the 9th day of July, 1942.

According to the bill Keeley transferred the benefit of his purchase of the interest in the Cain Building to one P. J. Keeley; and the same was thereafter conveyed by E. L. Maxwell, special commissioner, to P. J. Keeley, in which conveyance C. P. Keeley joined. It seems to be understood, if not conceded, by all parties that P. J. Keeley took title to the one-half interest in the Cain Building, subject to the then outstanding agreement, that plaintiff had the right to redeem the same. Following this conveyance to P. J. Keeley, and on November 19, 1941, Joseph J. Madden, assuming to act as his counsel, wrote a letter to plaintiff in which he said: "Mr. Keeley has further directed me to say that he is willing to buy your one-half interest in this building [referring to the Cain Building] at a price of $12,000.00, cash, less the balance of approximately $1900.00 due from you to John P. Keeley, Jr., which is a first lien thereon, as well as any other liens that may appear of record against your interest in this property; or, Mr. Keeley will sell you his one-half interest therein for the sum of $12,000.00 cash,

plus the above balance due John P. Keeley, Jr. However, this offer to buy or sell as herein made is with the distinct understanding on the part of Mr. Keeley that the transaction must be completely consummated before November 28, 1941, at twelve o'clock noon." On November 25, 1941, plaintiff tendered and paid to P. J. Keeley the sum of twelve thousand dollars cash, in accordance with his demand, together with the sum of $2,338.64 in payment of a certain indebtness secured by deed of trust in favor of John P. Keeley, Jr., whereupon P. J. Keeley executed to plaintiff a deed conveying his one-half interest in the Cain Building, and apparently the transaction was closed as to that property.

According to the record on or about November 27, 1941, plaintiff sought to redeem the three lots and the two tracts of land above mentioned, and on that date mailed to C. P. Keeley her check for $750.62, to cover the purchase price of the said properties, with interest, with a deed prepared for his execution. On December 22, 1941, Joseph J. Madden, assuming to act as attorney for C. P. Keeley, wrote a letter to plaintiff in which he said: "Mr. C. P. Keeley has requested me, as his attorney, to return to you the enclosed blank deed conveying certain real estate therein described, together with your check, dated Novembr 27, 1941, for the sum of $750.62, which blank deed and check you attempted to deliver to him on yesterday, and to advise you that he does not desire to sell such real estate at this time." Further efforts to effect the redemption were unavailing, and after the death of C. P. Keeley, plaintiff instituted this suit.

A demurrer was interposed to the bill, setting up numerous grounds: (1) That the bill failed to allege that the contract sought to be enforced was in writing; (2) that the date of the contract and the time in which the same was to be performed was not set out, nor were the terms of the contract; (3) that there is no allegation of the payment of $15,010.00, which C. P. Keeley paid for the Cain Building; (4) that it did not appear that the conduct of plaintiff was equitable. This demurrer

was overruled. At the same time defendants, the heirs and distributees of C. P. Keeley, filed their plea of the statute of frauds, and also their answer, in which they do not, in express terms, deny the agreement alleged in plaintiff's bill, although there is some question as to who actually bid in the three lots and two tracts of land mentioned above. The chief defense set up in the answer is that plaintiff was not entitled to the relief prayed for, because of her failure to pay the sum of $3,010.00, which remained unpaid after the application of the $12,-000.00 paid by her to P. J. Keeley, at the time she redeemed the interest in the building aforesaid, and the effect of the answer is to ask the court to attach the balance of $3,010.00 aforesaid to the purchase price of the three lots and the two tracts of land aforesaid before decreeing a redemption thereof. There was a demurrer to this answer, and to the plea of the statute of frauds, setting out sixteen separate grounds, all of which the court overruled.

The plaintiff then filed her replication, which does nothing more than amplify the allegations of her bill, and make answer to the contention of the defendants, set up in their answer, relative to the sum of $3,010.00, claimed to be due as aforesaid, and on this record, without any proof being taken, the case was submitted for decision.

On May 25, 1945, the trial court entered a decree enforcing the contract between plaintiff and C. P. Keeley, as to the three lots and the two tracts of land herein involved, requiring the conveyance of the said lots to plaintiff upon the payment of $695.00, with interest from the 12th day of August, 1940, to the date of the decree. From this decree the defendants prosecute this appeal.

In our opinion, the purchase of the lots and land, the redemption of which is sought in this suit, was a transaction separate and apart from that involving the one-half interest in the Cain Building. The properties were separated, and separate sums bid therefor. The benefit of one purchase was transferred to a person not a party

to the verbal agreement. We think therefore that when C. P. Keeley turned over to P. J. Keeley the benefit of his purchase of the interest in the Cain Building, P. J. Keeley became the person with whom plaintiff had to deal as to the Cain Building. He could have demanded of her the full sum of $15,010.00, with interest, before she could have required him to convey the property to her, assuming that the verbal agreement aforesaid was legally enforceable. Apparently, P. J. Keeley did not choose to make this demand, but instead agreed to sell what he termed his interest in, the Cain Building at the price of $12,000.00, and the payment to another person of an existing mortgage on the Cain interest. The plaintiff accepted this offer, paid P. J. Keeley $12,000.00, and paid to John B. Keeley, Jr., the sum of $2,338.64 to cover the mortgage, and the P. J. Keeley interest in the Cain Building was conveyed to her. This, we think, settled that transaction, not as part performance of any agreement, but a new and different agreement, in which the C. P. Keeley heirs and distributees, as such, had no interest in the sum of $3,010.00, representing the difference between the $12,000.00 paid under the new agreement and the $15,010.00 originally paid by C. P. Keeley for the Cain property.

The question then remains whether under the pleadings there can be a decree in favor of plaintiff. The statute of frauds was pleaded in the case, and a demurrer thereto was sustained, thus sustaining plaintiff's contention that the statute does not apply, because of what is termed partial compliance with the contract. As stated above, we think the compliance with the contract related only to the interest in the Cain Building. In our opinion, nothing has been done which amounts to a partial compliance with the contract relating to the other properties involved, and we think that essential to take the case out of the statute of frauds.

If we say that the purchase of the lots and land, and that of the interest in the Cain Building constituted a single transaction, then we must find that the money

expended by C. P. Keeley in the purchase of these properties was $695.00 and $15,010.00, respectively, or an aggregate of $15,705.00, of which the plaintiff has repaid $12,000.00, leaving a balance of $3,705.00, with interest, which she must repay in compliance with her agreement as she avers it to be in her bill. We cannot hold the agreement to be one transaction in one aspect of the case, and separable in another. If separable, as we think it was from the beginning, and certainly from the time when P. J. Keeley came into the picture, then there was no part performance as to the agreement for the purchase of the lots and the two tracts of land above mentioned.

Therefore, the naked question is presented whether the verbal agreement between C. P. Keeley and plaintiff, apparently not controverted, was an agreement which can now be enforced. The agreement was nothing more than one whereby a party agrees to purchase land and take title thereto, and permit another party to secure title thereto by payment of the purchase money and interest at a later date. We had a closely similar question before us in *Dye* v. *Dye,* 128 W. Va. 754, 39 S. E. 2d 98. We there held: "An agreement between two persons, one the owner of land about to be sold at a judicial sale, and the other the prospective bidder therefor at such sale, that the last-mentioned person will purchase said land, pay for the same, and at some future, indefinite date permit the first-mentioned person to redeem the same by payment of the purchase price paid therefor at the judicial sale aforesaid, is a contract for the sale of land, which, under Code, 36-1-3, to be enforceable, must be in writing"; and, further, "Under Code, 36-1-4, an oral express trust in land can only be created where the grantor makes a conveyance of the legal title to such land to another, to be held by him in trust for the grantor or a third person." We can see no distinction, in principle, between the case at bar and the *Dye* case. The agreement between plaintiff and C. P. Keeley was nothing more than an agreement for the sale of land. Of course, such an agreement can be made, but to

be enforceable it must be in writing. Code, 36-1-3. The right to specific performance in this case must be based upon trust relations. In other words, Keeley must have held this property in trust for plaintiff. Under, Code, 36-1-4, he could, in the circumstances of this case, only make that trust effective and enforceable by a declaration in writing. Under Code, 36-1-4, there is only one situation where an oral express trust can be created, and that is where the grantor makes a conveyance of the legal title to another to be held by him in trust for the grantor or a third person.

For the reasons above stated the decree of the Circuit Court of Randolph County complained of, is reversed and the plaintiff's bill dismissed.

*Decree reversed; bill dismissed.*